In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-1475

IN RE: PHILIP E. RUBEN,

*Debtor-Appellant,*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 8311 — **Thomas M. Durkin**, *Judge.*

ARGUED OCTOBER 28, 2014 — DECIDED DECEMBER 23, 2014

Before BAUER, POSNER, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* In 2008 Lauralee Bell, on behalf of a trust of which she was the trustee, sued Philip Ruben, a lawyer, plus other persons and his former law firm, in an Illinois state court. She charged the defendants, including Ruben, with having both negligently and fraudulently mismanaged her trust, inflicting a loss on it of some $34 million. The defendants asked her to arbitrate her claims. She agreed, but before she initiated the arbitration Ruben filed for bankruptcy under Chapter 7 of the Bankruptcy Code (liquidation). After initiating the arbitration Bell filed an adversary complaint in the bankruptcy court opposing discharge of Ru-

ben's fraud-based debt to her, pointing out that a debt incurred in order to perpetrate a fraud is not dischargeable. 11 U.S.C. §§ 523(a)(2)(A), (4); *Cohen v. de la Cruz*, 523 U.S. 213, 222–23 (1998); *In re Blaszak*, 397 F.3d 386, 390–92 (6th Cir. 2005). The bankruptcy judge granted Ruben a discharge of his other debts, but not of the fraud debt that was the subject of Bell's adversary claim.

Ruben's liability insurance covered negligence but not fraud, which may have been why Bell had lodged negligence as well as fraud claims against him in her original suit, despite the close overlap between the two types of claim—indeed many of the factual allegations underlying the two were the same, the difference between them being largely the doctrinal niche occupied by particular allegations. The overlap may have been what persuaded Ruben to seek to have the arbitration panel decide Bell's fraud claims against him rather than just her negligence claims. Bell agreed to let the panel do that.

Bell settled both her negligence claims against Ruben, and all her claims against the other defendants, in the arbitration proceeding. That left only her fraud claims against Ruben for the arbitration panel to resolve. After a hearing the panel ruled that because of Bell's settlements with the other respondents and her dismissal of some of her claims against Ruben, her "damages proven to be attributable to the actions of [Ruben] have been compensated and therefore [Bell] shall take nothing against [Ruben] on her remaining claims." But the panel ordered Ruben to pay "the administrative fees and expenses of the American Arbitration Association that were advanced by [Bell] totaling $21,200.00," and further ordered that "the compensation and expenses of

the arbitrators that were advanced by [Bell] totaling $150,304.54 shall be borne by [Ruben]." Thus the panel ruled that Ruben owed Bell a total of $171,504.54. The American Arbitration Association, the rules of which governed the arbitration, provide that the expenses of an arbitration "shall be borne equally by the parties, unless they agree otherwise or *unless* the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." American Arbitration Association Rule No. R-50 (emphasis added).

When Ruben refused to pay, Bell amended the complaint in her adversary proceeding to seek an order that Ruben pay her the $171,504.54 that the arbitrators had ordered him to pay. The bankruptcy judge refused, and entered summary judgment in favor of Ruben. Bell appealed to the district court, which reversed and entered summary judgment in favor of Bell, precipitating Ruben's appeal to us.

Section 727(b) of the Bankruptcy Code provides that a general discharge "discharges the debtor from all debts that arose before the date" on which the debtor filed for bankruptcy. Citing this section, Ruben argues that a debt that a bankrupt incurs after his debts have been discharged in bankruptcy, but that he wouldn't have incurred had it not been for a prepetition claim, is itself a prepetition claim, and is therefore dischargeable if the prepetition claims (he would say the other prepetition claims) against him have been discharged. Had the negligence claims not been submitted to arbitration, he would not have moved to have the fraud claims added to the arbitration, and the arbitrators would have had no occasion to assess costs against him. So, he concludes, his debt for those costs is the effect of prepetition

claims and therefore itself a prepetition claim. But the "therefore" is incorrect. A cause and an effect are not the same thing. The well-known proverbial rhyme "For want of a nail … the kingdom was lost" attributes to the absence of a nail in one of the horseshoes of Richard III's horse at the Battle of Bosworth Field the loss of his kingdom. Nevertheless a nail is not a kingdom. Neither need a claim arising from a prepetition claim be itself a prepetition claim.

What dooms (but not the only thing that dooms) Ruben's effort to escape the arbitrators' assessment of expenses is that the assessment was a result of his freely chosen decision to participate in the arbitration. Had he not participated, Bell would instead have pressed her fraud claims against him in her adversary proceeding, and it is inconceivable that the bankruptcy court—the host as it were of the adversary proceeding—would have assessed substantial costs against him. The bulk of the $171,504.54 in costs assessed against Ruben by the arbitration panel—$150,304.54 (87.6 percent)—was for the expenses and compensation of the arbitrators. Courts don't make litigants pay judges' salaries. But arbitrators, being secretive, wielding very broad discretion, being far less rule-bound than courts—and not being paid for their work by the government—charge their salaries to the parties to the arbitration. By asking to be allowed into the arbitration, Ruben voluntarily exposed himself to assessments the amount of which he could not have calculated in advance. It is odd to think that because Ruben chose to roll the dice, Bell should be deprived of the costs that the arbitrators awarded her.

In tension with his assertion that postpetition activity that arises out of prepetition claims may give rise only to a

prepetition claim, Ruben asks us to distinguish between a bankrupt who initiates an action in the postpetition period and one who merely defends in that period against a prepetition claim. He says that in the former case the postpetition activity is the bankrupt's choice, but in the latter case the bankrupt is merely defending against a claim and anyone should be entitled to do that without being penalized. If the defense succeeds, he says, it would be unreasonable to refuse to discharge the debt incurred by the bankrupt, since the debt would have been exposed as the consequence of a nonmeritorious claim by his adversary.

But did the arbitrators find Bell's claim against Ruben to be nonmeritorious? They did not explain the basis for their assessment of expenses against him, but by referring to "damages proven to be attributable to [Ruben's] actions" they implied that he had committed fraud. They did not order Ruben to pay damages to Bell, but such an order would have been pointless because those damages had been paid by other respondents in the arbitration. Assuming the panel thought that Bell had proved fraud, requiring her rather than Rubin to bear the costs of the arbitration proceeding would have been tantamount to subtracting $171,504.54 from her damages award. Ordering Ruben to pay this amount imposed a sanction on a wrongdoer intended to make the victim whole. If deemed a dischargeable debt, the sanction would evaporate.

The inference that the order to pay the $171,504.54 in expenses was indeed punitive in purpose is reinforced by the findings of a Hearing Board of the Illinois Attorney Registration and Disciplinary Commission in *In re Philip E. Ruben*, Commission No. 2012PR00120, at 1, Sept. 5, 2014, www.

iardc.org/rd_database/disc_decisions_detail_print.asp?Grou
p=11421 (visited Dec. 22, 2014). The Board found that Ruben
had "altered a conflicts acknowledgement and two checks,
… falsif[ied] evidence and engag[ed] in conduct involving
dishonesty, fraud, deceit or misrepresentation"—mostly re-
lating to the Bell trust. Not only did the Board criticize Ru-
ben's prepetition conduct; it also noted his obstinate postpe-
tition defense of that conduct, and cited as further aggravat-
ing factors that Bell "had to hire additional counsel, incurred
significant expense, and spent many years attempting to re-
coup her losses," and that Ruben "was less than cooperative
during that litigation and contributed to the delay."

As if all this were not enough, the distinction between
pre- and postpetition claims, so far as relates to the discharge
of the cost award grounded on those claims, is artificial.
With respect to both types of claim the focus should be on
the relation between the pre- or postpetition activity and the
"fresh start" purpose of allowing a bankrupt to discharge his
debts. See *In re Hadden*, 57 B.R. 187, 190 (Bankr. W.D. Wis.
1986). Suppose the bankrupt's postpetition activity, whether
aggressive or defensive, is wasteful, improvident; then deny-
ing discharge of the expense he incurs in that wasteful activi-
ty is a proper sanction, for "even if a cause of action arose
pre-petition, the discharge shield cannot be used as a sword
that enables a debtor to undertake risk-free [postpetition]
litigation at others' expense." *In re Ybarra*, 424 F.3d 1018,
1026 (9th Cir. 2005); see also *In re Sure-Snap Corp.*, 983 F.2d
1015, 1018 (11th Cir. 1993). "A principal goal of bankruptcy
is to provide the debtor with reasonable exemptions and a
fresh start. Allowing the debtor to discharge attorney's fees
incurred in the post-petition pursuit of dubious claims might
invite egregious abuses, while not allowing discharge of at-

torney's fees might prevent debtors from pursuing 'reasonable exemptions' which are in the form of lawsuits. The balance must be struck so that post-bankruptcy acts on the part of the debtor cannot be undertaken with impunity. This follows from the general principle that only liabilities arising from pre-petition acts are discharged in bankruptcy." *In re Hadden*, *supra*, 57 B.R. at 190.

Last we note that Ruben did not seek judicial review of the arbitrators' award. He could not have thought that just because the arbitration had originated in prepetition claims against him he could disregard the arbitrators' authority to award fees and expenses by challenging the award in a collateral proceeding, the bankruptcy proceeding.

Ruben makes other arguments, but either they were waived below or lack even arguable merit. The judgment of the district court denying the discharge of Ruben's debt for the $171,504.54 in costs imposed by the arbitration panel is

AFFIRMED.