May 25, 2017

**Supreme Court**

No. 2016-71-Appeal.
(KC 11-60)

Joanne C. Miller      :

    v.        :

Wells Fargo Bank, N.A. et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Joanne C. Miller    :

v.        :

Wells Fargo Bank, N.A. et al.  :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on April 6, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The plaintiff, Joanne C. Miller (plaintiff or Miller), appeals from a Superior Court judgment, after a nonjury trial, entered in favor of the defendant, Wells Fargo Bank, N.A. (defendant or Wells Fargo).  The plaintiff argues on appeal that: (1) the defendant breached federal guidelines regarding loan modification review and improperly foreclosed on her home while her loan modification request was pending; (2) the defendant breached the covenant of good faith and fair dealing; and (3) the plaintiff's reliance on the federal regulations, as well as the defendant's failure to adhere in good faith to those regulations, should have estopped the defendant from foreclosing on the property.  After careful review of the record, the memoranda submitted by the parties, and the oral arguments, we are satisfied that cause has not been shown, and thus, this appeal may be decided at this time.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**Facts and Travel**

This case arises from the unfortunate foreclosure of a residential property as a result of defaulted mortgage payments and the borrower's inability to receive a loan modification or a subsequent rescission of foreclosure. The loan at issue was secured by a residential mortgage on property located at 233 Beach Avenue in Warwick, Rhode Island.[1] In August 2009, as a result of changed financial circumstances, Miller, the borrower, could not afford her upcoming monthly mortgage payment on her home, which she occupied with her four children.[2] Miller timely contacted Wells Fargo, the lender, to explain her changed circumstances and to explore a new payment plan. At that time, the scheduled monthly mortgage payment for August was $1,645.30. With only $900 set aside, Miller offered to allocate these funds towards the August payment and to pay the remaining balance as part of her next scheduled payment. Although Miller's proposal was not accepted, the Wells Fargo representative suggested that Miller might be eligible for a loan modification, which was designed to prevent foreclosure for qualified borrowers.[3] However, this suggested lifeline proved to be ephemeral, and Miller entered into a bureaucratic quagmire.

---

[1] On March 30, 2005, Miller executed a promissory note and mortgage for $204,000. The scheduled monthly mortgage payment was $1,645.30.

[2] Several recent events in Miller's personal life had materially changed her financial position. For instance, Miller had recently divorced from her husband, the co-obligator of the mortgage note; a court order reduced the monthly child-support payments for her four children; and, as a real estate broker with an income based on sales commissions, Miller's income was inherently sporadic and a recent property sale she negotiated had fallen through.

[3] President Obama, in February 2009, signed into law the Homeowner Affordability and Stability Plan to stabilize the housing market by assisting struggling homeowners in obtaining financial relief and avoiding foreclosure. In March 2009, the United States Department of Treasury issued national guidance for loan modifications throughout the mortgage industry and subsequently expanded that guidance through a series of policy announcements. This included the Home Affordable Modification Program (HAMP), a uniform mortgage modification program, designed

It began on September 3, 2009, when Miller received a packet from Wells Fargo, which contained financial forms that she needed to complete and return by September 18, 2009, in order to begin the application process. In accordance with the federal Home Affordable Modification Program (HAMP) guidelines, Miller was required to submit current and verifiable evidence of income as proof of her eligibility for the program.[4] As such, a mere request for modification, standing alone, would not stay the foreclosure process because Wells Fargo reserved the right to declare default on the mortgage and, according to HAMP, to proceed with the foreclosure until the loan modification request was evaluated.

On September 14, 2009, Wells Fargo sent Miller a letter informing her that she needed to pay the loan delinquency amount in full by October 14, 2009, or else Wells Fargo would proceed with the foreclosure. However, it was not until October 29, 2009, that Miller received a letter denying her loan modification plan. According to this letter, Wells Fargo denied the modification plan as a result of Miller's alleged failure to provide the necessary information within the timeframe required by her trial modification period workout plan. Miller contends that there was no evidence that she agreed to a trial modification period workout plan or that such a plan had been prepared. On or about November 3, 2009, Miller received yet another letter from Wells Fargo—her third letter in three weeks—which indicated that certain financial information must be submitted within ten days, notwithstanding the October 29, 2009, rejection.

to provide eligible borrowers the opportunity to modify their mortgage loans in order to make them more affordable. Under HAMP, a servicer will utilize the uniform loan modification process to provide a borrower with sustainable monthly payment plans. Under the servicer participation agreement, participating servicers are required to consider all eligible mortgage loans unless otherwise prohibited by the rules of the agreement and/or other investor servicing agreements.

[4] In attempting to apply for a loan modification, Miller had submitted five "hardship letters." However, the trial justice also found that, by October 29, 2009, Wells Fargo had received a substantial amount of information necessary to verify and evaluate Miller's sources of income for the purposes of the loan modification request.

Although she complied, Miller nonetheless received several more letters from different regional offices throughout the country, stating that Wells Fargo had not received the requested information. Although Miller continuously sent Wells Fargo substantial information regarding her financial situation, Wells Fargo, on January 15, 2010, notified Miller of the foreclosure sale, which was held on March 10, 2010. On March 28, 2010, Miller requested rescission of the foreclosure. She alleged that a Wells Fargo employee, Natura Gibbons (Gibbons), made representations that the foreclosure would be rescinded. On August 12, 2010, Miller's request for rescission was denied.[5]

On January 14, 2011, Miller, acting pro se, brought suit against Wells Fargo in Kent County Superior Court. Miller's original, handwritten, complaint—consisting primarily of the facts surrounding her efforts to obtain a loan modification—indirectly alleged "fraudulent representation" as the cause of action. On March 2, 2011, Miller filed an amended complaint, alleging that Wells Fargo had violated the Deceptive Trade Practices Act. Miller sought injunctive relief to prevent Wells Fargo from initiating the eviction proceeding and requested that Wells Fargo return her home with clear title and provide compensation for her lost wages as well as her pain and suffering. On October 12, 2011, the Superior Court granted Miller's motion to further amend the complaint.

In this amended complaint, which is the focus of this appeal, Miller asserted six causes of action: (1) violation of the Rhode Island Mortgage Foreclosure Consultant Regulation, G.L. 1956 chapter 79 of title 5; (2) violation of the Rhode Island Deceptive Trade Practices Act, G.L. 1956 chapter 13.1 of title 6; (3) violation of the "mortgage-related provisions of the Omnibus Appropriations Act of 2009"; (4) breach of the implied covenant of good faith and fair dealing;

---

[5] It was disclosed at oral argument that Miller has resided in the home throughout these proceedings and was paying for the occupancy and use of the premises.

- 4 -

(5) breach of the Uniform Commercial Code, chapter 2 of title 6A; and (6) promissory estoppel based on a statement made by Wells Fargo's alleged agent/employee, Gibbons.

A bench trial was held in November 2014, throughout which Miller acted pro se. On December 17, 2014, Miller filed a posttrial motion to amend her complaint to conform to the trial evidence, which was denied by the Superior Court justice.[6] Wells Fargo moved for judgment as a matter of law on all six counts, which the Superior Court justice granted in a written decision. On March 30, 2015, the Superior Court justice found that, although Miller testified at trial that she had provided the necessary financial documents before September 18, 2009, she failed to submit any documentary evidence to corroborate her testimony. The Superior Court justice also found that, before the October 29, 2009, letter denying the requested loan modification, Wells Fargo had received a significant amount of information sufficient to have verified Miller's sources of income and to have evaluated the loan modification request.

Nonetheless, the Superior Court justice ruled in favor of Wells Fargo on all counts.[7] The Superior Court justice held that, because Wells Fargo was under no contractual obligation to modify or consider a loan modification, there were no facts to support a finding that Wells Fargo breached its duty of good faith and fair dealing. Additionally, because Miller failed to produce

---

[6] This issue is not before us on appeal.

[7] The issues decided by the Superior Court justice and not raised on appeal, provide that: (1) Wells Fargo was excluded from the Rhode Island Mortgage Foreclosure Consultant Regulation because Wells Fargo was a business of the United States "relating to banks"; (2) Wells Fargo's alleged violation of the Rhode Island Deceptive Trade Practices Act, G.L. 1956 chapter 13.1 of title 6 (DTPA) was invalid because a mortgage loan, which is neither a "good" nor "service", is not subject to the DPTA, and Wells Fargo, as a federally regulated entity, was not subject to the DPTA; (3) Wells Fargo's alleged violation of the "mortgage-related provisions of the Omnibus Appropriations Act of 2009" (OAA) was invalid because the OAA was issued as a directive, and, thus, did not create a private right of action; and (4) a mortgage loan did not constitute a "good" in accordance with the alleged unfair business practice in violation of the Uniform Commercial Code, G.L. 1956 chapter 2 of title 6A.

sufficient evidence that Gibbons was an employee of Wells Fargo, the Superior Court justice was not satisfied that any promises to rescind the foreclosure were made, upon which Miller could have relied to her detriment. Thus, he concluded that Miller failed to establish a claim under any theory of liability set forth in her complaint regarding the mortgage loan modification plan. Final judgment entered on September 1, 2015, and Miller timely appealed.

Before this Court, Miller argues that the Superior Court justice erred in finding for Wells Fargo because defendant: (1) violated Treasury Directive 09-01 in noticing and conducting the foreclosure sale; (2) breached the implied covenant of good faith and fair dealing; and (3) was "estopped from conducting [the] foreclosure sale due to [Miller's] submission of over one hundred pages of financial documentation in accordance with the HAMP program and communications between the parties relating thereto."

## Standard of Review

"Our review of a trial justice's decision on a motion for judgment as a matter of law is <u>de novo</u>." <u>McGarry v. Pielech</u>, 47 A.3d 271, 279 (R.I. 2012) (quoting <u>Medeiros v. Sitrin</u>, 984 A.2d 620, 625 (R.I. 2009)). "This Court, like the trial justice, will examine 'the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party.'" <u>Id.</u> (quoting <u>Oliveira v. Jacobson</u>, 846 A.2d 822, 829 (R.I. 2004)). "Judgment as a matter of law is appropriate 'if, after viewing the evidence in the light most favorable to the nonmoving party, [the trial justice] determines that the nonmoving party has not presented legally sufficient evidence to allow the trier of fact to arrive at a verdict in his favor.'" <u>Id.</u> at 280 (quoting <u>Gianquitti v. Atwood Medical Associates, Ltd.</u>, 973 A.2d 580, 590 (R.I. 2009)).

- 6 -

## Analysis

We note at the outset that the numerous and unfortunate miscommunications and misunderstandings between the parties to this controversy have not escaped our review. As explained by the Superior Court justice, Wells Fargo is a large institution, with multiple locations, and Miller, unfortunately, was caught in the midst of the communications from the various branches. The record demonstrates that this case does not represent Wells Fargo's finest hour.[8]

On appeal, Miller contends that the Superior Court justice erred as a matter of law in issuing his decision and entering judgment for Wells Fargo. First, Miller argues that Wells Fargo breached federal regulations during the loan modification review process and improperly foreclosed on her home while her loan modification request was pending. Miller asserts that Treasury Directive 09-01 prohibited Wells Fargo from noticing and conducting the foreclosure sale, arguing that servicers must not conduct foreclosure sales on loans that have been referred to foreclosure during the thirty-day period within which a borrower has submitted documents as verification of eligibility for a loan modification plan.[9] However, absent from Miller's original or amended complaint is any suggestion of a claim related to Treasury Directive 09-01.

---

[8] The Superior Court justice found:

> "[Wells Fargo] was [not] intentionally trying to deceive the borrower, but that [Wells Fargo] is an enormous corporation, and the staff given the responsibility of communicating with borrowers about loan modification and loan default was so decentralized that no one office was aware of the status of the review process for any individual borrower."

We share the concerns expressed by the Superior Court justice.

[9] Miller highlights the Superior Court justice's finding that, prior to October 29, 2009, Wells Fargo had received sufficient financial documentation to have evaluated her eligibility.

Accordingly, the argument that Miller now raises on appeal was not raised in the complaint nor was it addressed at trial. In accordance with this Court's longstanding "raise-or-waive" rule, if an issue was not properly asserted, and thereby preserved, in the lower tribunals, this Court will not consider the issue on appeal. See State v. Gomez, 848 A.2d 221, 237 (R.I. 2004). We therefore deem this contention waived.

Next, Miller contends that Wells Fargo breached the covenant of good faith and fair dealing in the promissory note, mortgage, and HAMP modification process. However, the Superior Court justice concluded, "[T]here were no contract terms which afford [Miller] any right or impose upon [Wells Fargo] any obligation to modify a mortgage loan or to consider such modification." Rather, as the Superior Court justice explained, "the mortgage contain[ed] clear and unambiguous language that [Wells Fargo] may foreclose for a payment default, without first considering loan modification."

When reviewing a trial justice's decision on a motion for judgment as a matter of law, "[t]his Court, like the trial justice, will examine 'the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party.'" McGarry, 47 A.3d at 279 (quoting Oliveira, 846 A.2d at 829). Because we perceive no error with the Superior Court justice's factual findings, we agree with the decision that, in the absence of a contractual obligation on behalf of the lender to either modify the mortgage loan or exercise discretion in evaluating a potential modification, this claim for breach of contract must fail. As such, it cannot be held that Wells Fargo arbitrarily or inconsistently employed its contractual obligations in violation of the covenant of good faith and fair dealing. See McNulty v. Chip, 116 A.3d 173, 185 (R.I. 2015) (applying Massachusetts law and holding that "a claim

- 8 -

for breach of the implied covenant of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract"); see also Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir. 2013) ("[T]he implied covenant cannot 'create rights and duties not otherwise provided for in the existing contractual relationship.'" (quoting Ayash v. Dana-Farber Cancer Institute, 822 N.E.2d 667, 684 (Mass. 2005))). Turning to the HAMP modification process specifically, the First Circuit in MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491 (1st Cir. 2013), held that "borrowers are not third-party beneficiaries of agreements between mortgage lenders and the government." See also Cathay Cathay, Inc. v. Vindalu, LLC, 962 A.2d 740, 745-46 (R.I. 2009) (holding that, in order "[t]o prevail on a third-party beneficiary theory," the claimant must prove that he or she is an intended beneficiary of the contract). Accordingly, we are of the opinion that the Superior Court justice did not err in determining that Wells Fargo did not breach the covenant of good faith and fair dealing.

Lastly, Miller contends that Wells Fargo was estopped from conducting the foreclosure sale based on the HAMP guidelines. Before the Superior Court, Miller argued that Wells Fargo was estopped from conducting the foreclosure sale because she detrimentally relied on promises that Gibbons allegedly made—that the foreclosure would be rescinded. However, the Superior Court justice concluded that Miller's estoppel assertion was not credible because there was insufficient evidence to support this assertion. Before this Court, Miller asserts, for the first time, that Wells Fargo was estopped from conducting the foreclosure sale due to her submission of over one hundred pages of financial documentation in accordance with the HAMP program and communications between the parties relating thereto. Miller contends that she relied, to her detriment, on Wells Fargo's good-faith review of her application and adherence to Treasury Directive 09-01 and thus failed to pursue other legal remedies. Although Miller's frustration

with Wells Fargo's conduct is real and understandable, her allegations regarding Treasury Directive 09-01 were not raised in the Superior Court. We therefore conclude that the Superior Court justice did not err in finding that Miller failed to meet the burden of proof on her promissory estoppel claim.

## Conclusion

Accordingly, for the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The papers in this case shall be remanded to the Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Joanne C. Miller v. Wells Fargo Bank, N.A. et al. |
| **Case Number** | No. 2016-71-Appeal.<br>(KC 11-60) |
| **Date Opinion Filed** | May 25, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Allen P. Rubine |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Corey J. Allard, Esq.<br><br>For Defendant:<br><br>David M. Bizar, Pro Hac Vice<br>Michael E. Jusczyk, Esq.<br>Randall L. Souza, Esq.<br>Lauren J. O'Connor, Esq. |