October 17, 2018

State          :

v.          :

Ricardo Romero.          :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                    :

v.                                       :

Ricardo Romero.                          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  After a trial in Providence County Superior Court, a jury found the defendant, Ricardo Romero (Romero or defendant), guilty of three counts of second-degree child molestation sexual assault, in violation of G.L. 1956 §§ 11-37-8.3 and 11-37-8.4.  On appeal, defendant contends that the trial justice improperly admitted testimony regarding previous restraining orders against defendant and erred in denying defendant's motion for a new trial.  On September 25, 2018, this case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After hearing the parties' arguments and reviewing the memoranda submitted by counsel, we are satisfied that cause has not been shown.  Accordingly, further briefing or argument is not required to decide this matter.  For the reasons explained herein, we affirm the judgment of conviction.

# I

## Facts and Travel

On December 18, 2013, the state charged defendant by indictment with two counts of first-degree child molestation sexual assault and one count of second-degree child molestation sexual assault for acts alleged to have been committed against the victim, Mary,[1] then six years old.[2] Mary is the daughter of defendant's then-girlfriend, Joann, and, at the time of the alleged incidents, Mary and Joann lived together in a small, two-bedroom apartment. In August 2012, Joann began dating defendant and he occasionally stayed overnight at the apartment.

According to the testimony at trial, on or about February 8, 2013, defendant spent the night at the apartment. Joann testified that she was aware that defendant got up from the bed two or three times during the night. Joann further testified that, when she asked defendant "if he was okay and why he kept getting up[,]" he became defensive and agitated; Joann found defendant's reaction to be odd. Joann testified that, the next day, she asked Mary if defendant had gone into her room the night before and that Mary had responded in the affirmative. That same day, Joann called defendant and confronted him about his having gone into Mary's room the previous night. Joann testified that defendant became defensive and confirmed that he had been in Mary's bedroom, but he stated that he had "always" checked on Mary. However, Joann testified that this upset her because that was not true and defendant "ha[d] no reason to be in [her] daughter's room." After the phone call with defendant, Joann asked her sister to attempt to elicit more information from Mary concerning defendant's presence in her bedroom the night

---

[1] Throughout this opinion, we use pseudonyms to identify the complaining witness and her mother.

[2] During the course of trial, counsel for both sides, as well as the trial justice, refer to Mary as a six-year-old, as do we. However, the record reveals that Mary had, in fact, recently turned seven years old at the time of the alleged sexual assaults.

before. Joann's sister took Mary out to eat; when the two returned, Joann's sister reported that Mary told her that defendant had "rubbed her butt."

According to Joann, later in the day on February 9, 2013, defendant arrived at the apartment unannounced. While there, defendant warned Joann, in what she characterized as a "very aggressive" manner, to "keep [her] windows locked." That same day, Joann called the police. When the police arrived, they spoke with Joann and then took Joann and Mary to Hasbro Children's Hospital. Mary was interviewed at a later date by the Child Advocacy Center. Defendant was arrested and the grand jury returned an indictment charging defendant with three counts of first-degree child molestation sexual assault on December 18, 2013.

Mary, who was ten years old at the time of trial, testified as to three separate times—comprising the three separate counts of the indictment—that defendant entered her bedroom on the night in question. Mary testified that defendant came into her bedroom while she was sleeping and pulled down her pants and underwear; Mary then felt a fingernail and a finger go inside her buttocks. Mary then testified that defendant again "did something bad" to her. According to Mary, she heard someone stomping in her room and remembers feeling something wet on her buttocks. Mary testified that defendant again pulled down her pants and underwear; she testified that, when she tried to move toward the wall, defendant grabbed her on the stomach. According to Mary, "[i]t was kind of in, but not that much"; she testified that defendant was moving a little and she knew it was in her buttocks because it "hurted" her. Finally, Mary testified that the final time defendant entered her bedroom she felt a hand, fingers, and fingernails squeeze her buttocks.

The state also called Joann as a witness. Defense counsel, during his cross-examination of Joann, attempted to elicit a motive for the accusations against defendant. In that inquiry,

defense counsel asked Joann if she desired to have children with defendant, if she was aware that defendant had five children, and if she knew that defendant had previously had a vasectomy. During this line of questioning, Joann denied wanting to have children with defendant, confirmed knowledge of the fact that he had had a vasectomy, and further stated that defendant was "not able to see" his children. The state's redirect examination of Joann on the topic of defendant not being able to see his children, discussed in more detail below, is at issue in this appeal.

At the conclusion of two days of trial, the jury found defendant guilty of the lesser-included offense of second-degree child molestation sexual assault on the first two counts, and also guilty of second-degree child molestation sexual assault on the third count. Thereafter, defendant moved for a new trial, arguing that the trial testimony lacked any indication of the necessary element of sexual gratification as to all three counts of second-degree child molestation sexual assault. Moreover, defendant averred that Mary's testimony indicating that there were two instances of penetration, particularly in light of the jury's finding of not guilty on the two counts of first-degree child molestation sexual assault, precluded a finding of guilty on the lesser-included offense of second-degree child molestation sexual assault. Ultimately, the trial justice denied defendant's motion for a new trial and sentenced defendant to three concurrent twenty-year terms of imprisonment, with seven years to serve and the remainder of the sentences suspended, with probation. Defendant timely appealed to this Court, arguing that the trial justice erred: (1) in overruling defendant's objection to Mary's testimony about existing restraining orders that prevented defendant from seeing his children and failing to strike that portion of Joann's testimony; and (2) in denying his motion for a new trial.

## II

## Standards of Review

### A

### Admission of Testimony Regarding Prior Restraining Orders

"Evidentiary rulings * * * are reviewed for abuse of discretion." *State v. Marizan*, 185 A.3d 510, 516 (R.I. 2018). This Court will not overturn "the trial justice's ruling unless the abuse of discretion resulted in prejudicial error." *Id.*

"In accordance with this Court's longstanding 'raise-or-waive' rule, if an issue was not properly asserted, and thereby preserved, in the lower tribunals, this Court will not consider the issue on appeal." *Miller v. Wells Fargo Bank, N.A.*, 160 A.3d 975, 980 (R.I. 2017). Moreover, this Court has held that "if an issue was not preserved by *specific objection* at trial, then it may not be considered on appeal." *State ex rel. Town of Tiverton v. Pelletier*, 174 A.3d 713, 718 (R.I. 2017) (quoting *State v. Pona*, 66 A.3d 454, 468 (R.I. 2013)); *see also State v. Jaiman*, 850 A.2d 984, 987 (R.I. 2004) ("To preserve an evidentiary issue on appeal, [the] defendant 'was required to show us that he objected specifically to this evidence at trial and that he stated the grounds for his objection.'") (quoting *State v. Feole*, 748 A.2d 239, 243 (R.I. 2000)).

### B

### Motion for a New Trial

When this Court reviews a motion for a new trial, we give "great weight to a trial justice's ruling" when that justice "articulate[s] sufficient reasoning in support of the ruling." *State v. Kizekai*, 19 A.3d 583, 589 (R.I. 2011) (quoting *State v. Guerra*, 12 A.3d 759, 766 (R.I. 2011)). "As long as 'the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left

undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong.'" *State v. Phannavong*, 21 A.3d 321, 325 (R.I. 2011) (quoting *State v. Peoples*, 996 A.2d 660, 664 (R.I. 2010)).

When a defendant makes a motion for a new trial, "the trial justice [must] place himself or herself in the role of a 'thirteenth juror' and then exercise[] his or her independent judgment as to the credibility of the witnesses and the weight of the evidence." *State v. Rainey*, 175 A.3d 1169, 1189 (R.I. 2018) (quoting *State v. Grantley*, 149 A.3d 124, 131 (R.I. 2016)). "Specifically, 'the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury.'" *State v. Heredia*, 10 A.3d 443, 446 (R.I. 2010) (quoting *State v. Texieira*, 944 A.2d 132, 140 (R.I. 2008)). If, after navigating through this three-step process, the trial justice determines that the jury's verdict was appropriate or that reasonable minds could differ, "then the analysis is complete and the verdict should be affirmed." *State v. Virola*, 115 A.3d 980, 991 (R.I. 2015) (quoting *State v. Harrison*, 66 A.3d 432, 445 (R.I. 2013)). "However, if the trial justice 'does not agree with the verdict or does not agree that reasonable minds could differ, then the trial justice must determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice.'" *Id.* (quoting *State v. Lake*, 90 A.3d 186, 193 (R.I. 2015)).

## III

## Discussion

## A

## Admission of Testimony Regarding Prior Restraining Orders

Defendant first asserts that the trial justice erred in allowing certain portions of Joann's testimony concerning the existence of restraining orders that prevented defendant from seeing his children from another relationship. Specifically, defendant contends that the trial justice's failure to respond to the objection or to strike Joann's testimony allowed the jury to "speculate on why such an order had been necessary and what behavior it was intended to forestall." The following exchange occurred during the state's redirect examination of Joann:

| | |
|---|---|
| "[THE STATE:] | Defense counsel asked you about wanting to have a child with the defendant. Remember that line of questioning? |
| "[JOANN:] | Yes. |
| "[THE STATE:] | And you said that you knew he had a vasectomy? |
| "[JOANN:] | Yes. |
| "[THE STATE:] | And you knew he had five children of his own? |
| "[JOANN:] | Yes. |
| "[THE STATE:] | But you said he couldn't see them? |
| "[JOANN:] | He was not allowed to see them. He has restraining orders. |
| "[THE STATE:] | Why is that? |
| "[DEFENSE COUNSEL:] | Objection, Judge. |
| "THE COURT: | I think we'll stop there. Thank you. |
| "[THE STATE:] | So he couldn't see his own kids? |

7

| "[DEFENSE COUNSEL:] | Judge – |
| "[JOANN:] | No, he can't. |
| "[DEFENSE COUNSEL:] | – move to strike. |
| "THE COURT: | Go on to something else." |

This Court requires a specific objection at trial, to ensure that the trial justice has knowledge of the allegation of error and can "have an opportunity to rule on it." *Pona*, 66 A.3d at 468. Accordingly, failure to make a specific objection—or any objection—will trigger the longstanding "raise-or-waive" rule. The record reveals that defense counsel did not object to the state's question to Joann confirming her prior testimony on cross-examination as to her knowledge regarding whether defendant could see his children, and defense counsel similarly did not object or move to strike after Joann answered that defendant "has restraining orders." Instead, defense counsel made a blanket objection to the state's question, "Why is that?" The defendant never articulated a specific reason for the objection, and likewise did not specify which part of Joann's testimony he believed should be stricken from the record. Moreover, defendant did not request a limiting instruction or move for a mistrial at any point during the questioning or thereafter. For these reasons, the "raise-or-waive" rule precludes defendant from raising the issue of the admission of Joann's testimony—that defendant "has restraining orders"—into evidence at trial.

Even if defendant had properly preserved this issue on appeal through a timely and specific objection, the record reveals that defense counsel opened the door to the state's inquiry on the topic during his cross-examination of Joann. Notably, during the cross-examination, defense counsel asked Joann if she was aware that defendant had had a vasectomy. Moreover, defense counsel asked Joann whether she was aware that defendant had five children of his own. In response, Joann testified that she knew defendant had five children and that "he can't see

8

them." Accordingly, even if a proper objection to the testimony had been raised, it would not have been an abuse of discretion to allow Joann's testimony on this issue because defendant opened the door during his cross-examination of Joann. *See Virola*, 115 A.3d at 997 (holding that the trial justice did not abuse his discretion in overruling the defendant's objection, because the defendant opened the door during cross-examination of the witness).

**B**

**Motion for a New Trial**

The defendant also appeals the trial justice's denial of his motion for a new trial. Specifically, defendant posits that the trial justice abused his discretion because the jury finding defendant "guilty of second degree assaults instead of first degree assaults as charged was an insufficient response to testimony that was essentially vague and incredible." Moreover, defendant maintains that the trial justice's analysis regarding Mary's testimony was "entirely conclusory."

As we have noted, "when ruling on a motion for a new trial, the 'record should reflect a few sentences of the justice's reasoning on each point.'" *Virola*, 115 A.3d at 991 (quoting *State v. Rosario*, 35 A.3d 938, 947 (R.I. 2012)). In denying defendant's motion for a new trial, the trial justice thoroughly explained his reasoning and rationale. He first reviewed the language of his jury instructions, which included the admonition to the jury that the state was required to prove that defendant engaged in the alleged activity "for the specific purpose of achieving sexual gratification or arousal[.]" He concluded that defendant's actions were for the purpose of arousal, "irrespective of whether it was also for sexual gratification." The trial justice then addressed Mary's testimony and acknowledged that certain aspects were not as clear on cross-examination as they were on direct regarding the "penetration element." However, the trial

9

justice also noted that the victim was testifying as a fourth-grader to events that transpired when she was merely six years old and in the first grade. Additionally, the trial justice explained that Mary's testimony, in his view, was "unembellished, unvarnished, and, in a word, credible, to the point of the sexual misconduct." Finally, the trial justice expressed his agreement with the jury's verdict and their decision to render guilty verdicts on the first two counts of the indictment for second-degree child molestation sexual assault, rather than first-degree child molestation sexual assault as charged, due to the lack of sufficiently explicit testimony on the issue of penetration. The trial justice specifically found it clear that "the jury gave careful attention to all the evidence. They deliberated several hours, they asked pertinent questions * * *. It is clear * * * that these jurors did not rush to judgment." For these reasons, we accept the credibility determinations of the trial justice, and we see no reason to disrupt his decision denying defendant's motion for a new trial.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to that tribunal.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Ricardo Romero. |
| **Case Number** | No. 2017-89-C.A. (P1/13-3819A) |
| **Date Opinion Filed** | October 17, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of Attorney General<br>For Defendant:<br><br>Camille A. McKenna<br>Office of the Public Defender |