December 11, 2019

**Supreme Court**

No. 2018-178-C.A.
(P1/17-1382AG)

State                          :

v.                          :

Alberto Rivera.                          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|       |   |
|-------|---|
| State | : |
| v.    | : |
| Alberto Rivera. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.** After a trial in Providence County Superior Court, a jury found the defendant, Alberto Rivera, guilty of one count of assault with a dangerous weapon in a dwelling house, in violation of G.L. 1956 § 11-5-4 (count one); one count of burglary, in violation of G.L. 1956 § 11-8-1 (count two); one count of assault with a dangerous weapon, in violation of § 11-5-2 (count four); one count of discharging a firearm while committing a crime of violence, in violation of G.L. 1956 § 11-47-3.2(b) (count five); one count of use of a firearm while in the commission of a crime of violence, in violation of § 11-47-3.2(a) (count six); one count of possession of a firearm by a person convicted of a crime of violence, in violation of § 11-47-5 (count seven); and one count of carrying a firearm without a license or permit, in violation of § 11-47-8(a) (count eight).[1] A second count of assault with a dangerous weapon

---

[1] The defendant had previously been convicted of a crime of violence. By agreement between the state and defendant, the jurors did not hear evidence regarding count seven, possession of a firearm by a person convicted of a crime of violence, to prevent them from learning that defendant had been convicted of that prior crime. The state and defendant stipulated that, if defendant was found guilty of a firearm offense in counts one, three, four, five, or six, he would also be guilty on count seven.

(count 3) was dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

On appeal, defendant contends that the trial justice improperly admitted a recording and transcript of a phone call between defendant and a confidential informant into evidence and also that the trial justice erred by failing to grant a mistrial or a new trial when it became clear that defense counsel had not received the complete discovery package in the case. For the reasons set forth herein, we affirm the judgment of conviction.

# I

## Facts and Travel

This case involves discord between defendant and his ex-wife, Brenda Villanueva, that stemmed from defendant's continued demand to see his two young children. That discord culminated in a shooting that occurred in the City of Providence, which left the victim, Juan Croussette, severely injured and hospitalized for sixteen days. Three eyewitnesses linked defendant to the shooting: Croussette himself; Villanueva; and defendant's daughter, Mary.[2]

## A

## The Evidence

Preliminarily, before trial commenced, the trial justice noted that a transcript of a telephone call between defendant and a confidential informant (the ATF call) was prepared, but he commented that part of the transcript was in Spanish. The trial justice stated that he would not permit the use of the transcript at trial unless the Spanish portions were translated into English. The prosecutor noted approximately ten instances in the transcript where the speaker went "in and out of Spanish," and he notified the court that the Spanish portions were already in

---

[2] We refer to defendant's daughter, who was nine years old at the time of trial, by a pseudonym to protect her privacy.

the process of being translated into English. Defense counsel requested that a court approved or certified translator perform the interpretation; however, the trial justice found that unnecessary because a bilingual officer of the attorney general was translating the transcript. The trial justice explained that defense counsel could ask the Office of Court Interpreters to review the final transcript for accuracy if he so chose, to which defense counsel replied: "Thank you, Your Honor."

On October 24, 2017, trial commenced and Villanueva was the first witness to testify for the state. Villanueva testified that, on December 4, 2016, she and her two young daughters spent the night at Croussette's apartment. Villanueva testified that she woke up during the night when she felt Croussette get out of bed and saw him walk out of the bedroom. She then heard a loud bang on the glass sliding door, saw the glass from the door shatter on the floor, and then saw defendant coming through the glass sliding door. She testified that she could not see a gun, but she saw defendant point his hand directly at Croussette's upper body, toward his face. Villanueva testified that she then heard a gunshot and watched Croussette fall to the floor. Next, Villanueva testified that she saw Mary standing next to defendant pulling at his coat saying, "Daddy," while defendant then pointed the gun at Villanueva's head. Villanueva testified that she did not see defendant leave; but, once she realized that he had left, she called an ambulance. Villanueva testified that no one else was in the apartment besides her, Croussette, her two daughters, and defendant, and that no one had a weapon except defendant. She testified that, shortly after she called 911, defendant called her from a private number and told her that "if [she] said his name, he was going to blow [her] brains out."

Additionally, Villanueva testified that she listened to a recording of a phone call between two individuals—the ATF call—and recognized one of the voices as defendant's because she

had spoken to him on the phone "[c]ountless times." Next, Villanueva testified, she was provided with a transcript of the ATF call and that some of the transcript was in Spanish. She further testified that Spanish was her primary language and that the translated transcript accurately reflected the conversation between defendant and the other person.

On cross-examination, defense counsel pointed to various inconsistencies between Villanueva's in-court testimony and her prior statements to Providence police and at the grand jury proceedings in connection with this case. Villanueva conceded that, in her interview with Providence police after the shooting and at the grand jury hearing, she never mentioned that defendant had pointed the gun at her head. Villanueva further conceded that, in her statement to police, she did not tell them that she saw her daughter, Mary, tugging at defendant's jacket moments after the shooting. On redirect examination, the prosecutor directed Villanueva to her testimony from defendant's violation hearing in connection with this case. Villanueva confirmed that she was a witness at that hearing and that she had testified then that defendant pointed the gun at her after Croussette had been shot.

Next, Croussette testified for the state. Croussette testified that, on the date in question, Villanueva and her two children had slept at his apartment. Croussette testified that he awoke in the early morning hours when he heard footsteps on the patio outside the apartment. He testified that he went into the living room, turned on the lights to the patio, peered through the shades, and saw defendant standing in his yard. Croussette testified that he retreated into the bedroom to tell Villanueva to call the police and then heard a gunshot, followed by the sound of glass breaking from the sliding glass door. He testified that he told Villanueva to stay in the bedroom, and he went to get the girls from the living room to protect them. He then felt the impact of a gunshot penetrate his neck. Croussette testified that he fell to the floor and could hear defendant telling

Villanueva, "I told you so." Croussette testified that, after defendant left, he was able to get up from the floor and go outside to wait for an ambulance, which eventually arrived and transported him to Rhode Island Hospital.

On cross-examination, Croussette conceded that his in-court testimony may have implied that defendant was the shooter, while in his grand jury testimony he stated that he did not see who shot him, notice anyone in his living room, or remember seeing defendant in his apartment. On redirect examination, however, Croussette clarified that his statements at the grand jury regarding what he saw in the living room both before the glass shattered and after were the same as his trial testimony.

The state called Mary as its next witness. Mary testified that, on the night in question, she and her younger sister, Jane, were asleep on the couch in the living room at Croussette's apartment.[3] Mary testified that she woke up during the night because she heard glass breaking from the sliding glass door. She testified that she then saw defendant coming through the door holding a gun. Mary testified that, shortly after entering the apartment, she heard defendant shoot Croussette and then saw him point the gun to her mother's face and say, "What the F did I say." Mary testified that she told defendant not to do it and that he then left. Mary testified that, after defendant left, Villanueva called the ambulance and police. On cross-examination, Mary conceded that she had testified before the grand jury that she had told her mother what happened to help her mother remember. On redirect, however, Mary clarified that she only reminded her mother about the part where defendant pointed the gun at her mother's face, and that her mother then remembered exactly what happened, from her own point of view.

---

[3] We also refer to defendant's younger daughter, who was six years old at the time of trial, by a pseudonym for the protection of her privacy.

The final witness called by the state was Christian Jardin, a special agent with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Before Agent Jardin took the stand, however, defense counsel raised an objection. At sidebar, defense counsel voiced his objection to the state's offering the ATF call into evidence, stating that "no warrant has been shown for the interception of the phone call. If there was an interception * * * there's no ATF warrant for it. If it's under the guise of a [confidential informant], he's available and known. So the [confidential informant] should be here, because we know who he is." Defense counsel also remarked about the transcript of the ATF call, stating: "There's Spanish in it. We don't know who the person who translated the Spanish is, and I think it should be a certified, independent translator, not an unknown staff member at the Attorney General's Office." The prosecutor contended that the recording is what controls and that he had provided defense counsel with a copy of the recording of the ATF call more than a week before the trial. The prosecutor further explained that he provided defense counsel with a copy of the translated transcript when the issue was first raised at the start of trial, and defense counsel had ample time to review it. He also noted that Villanueva testified to the accuracy of the translation. On the issue of whether the ATF call itself was admissible into evidence, the prosecutor stated that this was not a wiretap, but was an issue of one-party consent.[4] Defense counsel argued that "[o]ne-party consent is between two private citizens, not a government agent and a private citizen[,]" and that defendant was in such a position that the "recording would've required a warrant[.]"

The trial justice ruled that the ATF call was "not a wiretap at all[,]" and was "a consensual recording." Regarding the transcript, the trial justice stated that it was his "demand"

---

[4] General Laws 1956 § 11-35-21(c)(2) provides that it is not unlawful for "[a] person acting under color of law to intercept a wire, electronic, or oral communication, where that person is a party to the communication, or where one of the parties to the communication has given prior consent to the interception[.]"

- 6 -

that the "bits and pieces" of Spanish be translated into English. The trial justice reminded defense counsel that a copy of the translated transcript was provided to him within two hours of translation and that he had invited defense counsel to have it reviewed. Finally, he noted that defense counsel never pointed to any inaccuracy in the transcript. With that, the trial justice overruled defense counsel's objection.

After the sidebar concluded, Agent Jardin took the stand and testified that he became involved in the investigation with respect to the shooting when a confidential informant who worked for him placed a call to defendant. The following exchange occurred during the state's direct examination of Agent Jardin:

> "[PROSECUTOR:] [D]id that confidential informant consent to the recording of that telephone call?
>
> "[AGENT JARDIN:] Yes.
>
> "[DEFENSE COUNSEL]: Objection, Your Honor.
>
> "THE COURT: Overruled.
>
> "* * *
>
> "[PROSECUTOR:] And does this -- what's on this CD accurately have -- is it the phone call itself?
>
> "[AGENT JARDIN:] Yes.
>
> "[DEFENSE COUNSEL]: Objection, Your Honor. Objection to the use of the defendant's name.
>
> "THE COURT: Overruled.
>
> "[PROSECUTOR:] Were you also given an opportunity, prior to testifying today, to review a transcript of that phone call?
>
> "[AGENT JARDIN:] Yes, I was.
>
> "* * *

"[PROSECUTOR:] And is that transcript a fair and accurate transcript of the actual phone call on State's 9?

"[AGENT JARDIN:] Yes.

"[PROSECUTOR]: Judge, at this time I move both 9 and 10 full, please.

"[DEFENSE COUNSEL]: Objection to both. Objection to the transcripts, specifically because it uses the defendant's name, which is never mentioned on the tape.

"THE COURT: Overruled."

Following this exchange, the prosecutor requested to play the recording of the ATF call for the jurors and provide transcripts of the call to them. The trial justice gave the following cautionary instruction:

> "The transcripts, ladies and gentlemen, of this telephone call will be circulated among you. Bear in mind that if you hear something on the audio recording that does not correlate with what you see on the printed page, it's what you hear that controls, not what is on the printed page[.] * * * Every effort has been made to transcribe the telephone call accurately. There are some portions that the transcriber was not able * * * to hear clearly and, therefore, the word 'inaudible' has been inserted. In any event, as I said to you, the transcript is not controlling. It is what you hear on the tape or the CD that's controlling. The transcript is simply an aid to assist you as you listen to the recording."

The ATF call was played for the jury without further objection, and, shortly thereafter, the state rested its case. Once again, just before the jury deliberated, the trial justice reminded them that "it's what you hear that counts. The transcript is simply an aid to assist you in listening to the audio recording." No request for a specific instruction regarding the use of defendant's name in the transcript was ever made.

- 8 -

# B

## The Motion for a Mistrial

Subsequently, when the state rested its case-in-chief, information regarding the Rule 16 discovery in the case arose. *See* Super. R. Crim. P. 16 (providing for discovery upon written request by a defendant in a criminal case). The prosecutor informed the trial justice that the state had prepared two manila envelopes as part of its discovery package. Both packages had been left in the attorney general's office for defense counsel to pick up; however, defense counsel picked up only one of the manila envelopes. The prosecutor explained that, in the week preceding trial, he had provided defense counsel with a full copy of the grand jury transcript, along with a copy of the recording of the ATF call, and that defense counsel had all materials that the state relied on in the case. Defense counsel claimed that the package contained an enormous amount of information that he had never seen before that would have been useful in properly preparing a defense. Based on this assertion, defense counsel requested a mistrial. The state objected, claiming that the only documents that were not in defense counsel's possession were the DVD videos of Mary and Jane's CAC (Child Advocacy Center) interviews; police narratives, which were reflected within the grand jury testimony; Croussette's medical records; and information retrieved from defendant's cell phone, which the state did not use in its case-in-chief.[5] The trial justice held an evidentiary hearing, outside the presence of the jury, based on defendant's motion for a mistrial. The hearing lasted several hours that day and consisted of two witnesses from the Rhode Island Office of the Attorney General.

---

[5] The state claimed that the information from defendant's cell phone contained only contact lists, the call log, and pictures of defendant holding a black firearm; however, that information was not used in the state's case.

After hearing from both witnesses, the trial justice examined the package that defense counsel had not retrieved from the attorney general's office and questioned defense counsel. Defense counsel agreed that a DVD of the recorded ATF call had been hand-delivered to him on October 19, 2017. Defense counsel informed the trial justice that he had handled the probation-violation hearing in connection with this matter. Defense counsel stated that both Villanueva and Croussette were witnesses at that hearing and that he received the reports from the police of their interviews. He also acknowledged having a copy of the violation hearing transcript. The trial justice also determined that defense counsel had the transcript of Mary's CAC interview, which was contained within the transcript of her grand jury testimony. Defense counsel then informed the trial justice that he had the CD with a recording from the grand jury proceedings and that he had listened to that CD. Defense counsel ultimately conceded that what he did not have were the videos of Mary or her sister Jane's CAC interviews, or the additional photographs of the crime scene. The trial justice looked through the forty photographs that defense counsel had not received and determined that defendant was not prejudiced by not having them.

Based on the information the trial justice elicited from defense counsel and the testimony presented, he denied both the request for a mistrial and a continuance, stating that defense counsel "had everything at his disposal that he could have had and should have had. The fact that he inadvertently did not pick up this material is no basis for a later self-serving request for a continuance."[6] The trial justice found that "[n]othing was hidden from the defense whatsoever"; however, he did offer that defense counsel could admit all the additional photographs of the

_____

[6] Despite initially denying defense counsel's request for a continuance, the trial justice ultimately offered one to him. However, the continuance was at defense counsel's expense in particular with regard to housing out-of-state witnesses that he had already examined and had been excused by the court.

- 10 -

crime scene into evidence, along with the video recording of Mary's CAC interview, if defense counsel thought it was of value to defendant's case. Defense counsel declined that request.

While the jury was deliberating, the trial justice held a conference in chambers. Defense counsel wanted to make the record clear that he did not "in any way, shape, or form believe that the Attorney General's Office failed to deliver" the discovery in this case, and that he did not fault the prosecutor in any way. Subsequently, the jury found defendant guilty on all counts. The defendant then filed a motion for a new trial, arguing that the jury's verdict was inconsistent with the evidence and failed to do substantial justice. The trial justice denied defendant's motion.

On March 15, 2018, the trial justice sentenced defendant to life imprisonment on count one; fifty years to serve on count two, concurrent with count one; ten years to serve on count four, also concurrent with count one; twenty years to serve on count five, consecutive to count one and nonparolable; ten years to serve on count six, consecutive to count four and nonparolable; and ten years concurrent with count one on counts seven and eight. The defendant was also sentenced to a nonparolable term of twenty-five years as a habitual offender. All sentences were to begin after defendant completed the term he was currently serving as a probation violator.

## II

### Discussion

On appeal, defendant argues that the trial justice erred by admitting both the recording and transcript of the ATF call into evidence, by failing to grant a mistrial when it became clear

that defense counsel did not possess the complete discovery package prior to trial, and by denying his motion for a new trial.[7]

## A

## Admission of the ATF Call Recording and Transcript

The defendant raises three arguments in support of his contention that the trial justice erred when he admitted the recording and transcript of the ATF call: (1) the state failed to establish that the confidential informant freely and voluntarily consented to the telephone call; (2) neither the audio recording nor the transcript was properly authenticated; and (3) the state resolved a crucial question of fact for the jury by identifying the recipient of the call as defendant.

## 1

## Standard of Review

"Evidentiary rulings are reviewed for abuse of discretion." *State v. Romero*, 193 A.3d 1167, 1170 (R.I. 2018) (deletion omitted) (quoting *State v. Marizan*, 185 A.3d 510, 516 (R.I. 2018)). "This Court will not overturn 'the trial justice's ruling unless the abuse of discretion resulted in prejudicial error.'" *Id.* (quoting *Marizan*, 185 A.3d at 516).

"In accordance with this Court's longstanding 'raise-or-waive' rule, if an issue was not properly asserted, and thereby preserved, in the lower tribunals, this Court will not consider the issue on appeal." *Romero*, 193 A.3d at 1170-71 (quoting *Miller v. Wells Fargo Bank, N.A.*, 160 A.3d 975, 980 (R.I. 2017)). To properly preserve an evidentiary issue on appeal, a party is "required to show us that he [or she] objected specifically to this evidence at trial and that he [or

---

[7] In defendant's brief, he appears to be taking issue with the trial justice's denial of his motion for a mistrial, but states that the court erred "by failing to grant a new trial[.]" This Court will review the trial justice's denial of both motions.

- 12 -

she] stated the grounds for [this] objection." *Id.* at 1171 (quoting *State v. Jaiman*, 850 A.2d 984, 987 (R.I. 2004)). We require "a specific objection at trial, to ensure that the trial justice has knowledge of the allegation of error and can 'have an opportunity to rule on it.'" *Id.* at 1172 (quoting *State v. Pona*, 66 A.3d 454, 468 (R.I. 2013)).

**2**

**Analysis**

First, defendant contends that the trial justice erred by admitting the recording of the ATF call because, he alleges, the state did not prove by a preponderance of the evidence that the confidential informant freely and voluntarily consented to the recording. Specifically, defendant asserts that Agent Jardin's "bare bones testimony" regarding the confidential informant's consent was not enough to meet the state's burden of proof.

Our careful review of the record, however, reveals that defense counsel never raised the issue of whether the confidential informant freely and voluntarily consented to the recording of the phone call with defendant. Instead, at sidebar before the state offered the recording into evidence, defense counsel argued that the one-party-consent rule was not applicable at all because one-party consent is between two private citizens, not a government agent and a private citizen. Accordingly, defense counsel maintained that the ATF agents were required to obtain a warrant to record the phone call because the confidential informant was a government agent.

Subsequently, when the state questioned Agent Jardin regarding the confidential informant's consent, defense counsel voiced a blanket objection, but never articulated any specific grounds for that objection. While defense counsel mentioned that the confidential informant was known and should testify, he never alerted the trial justice to the specific allegation of whether the state adequately proved that the confidential informant freely and

- 13 -

voluntarily consented. For this reason, our so-called "raise-or-waive" rule precludes defendant from raising that issue on appeal. *See Romero*, 193 A.3d at 1172 (requiring "a specific objection at trial" in order to allow the trial justice to rule on the objection).

Second, defendant argues that neither the ATF recording nor the transcript of the ATF call was properly authenticated. In accordance with the raise-or-waive rule, however, we are of the opinion that this argument has also been waived. *See Romero*, 193 A.3d at 1172. While the record is replete with blanket objections and more specific objections as to why the recording should not be admitted, defense counsel never objected based on authentication. Accordingly, because this argument was not raised before the trial justice, it is now precluded on appeal. *See id.*

Therefore, we need only address defendant's third claim—namely, that the trial justice erred when he did not independently determine whether the transcript of the ATF call was accurate, and that the inclusion of defendant's name in the transcript, despite the audio recording not identifying defendant as the speaker, influenced the jury into relying on the transcript's representation that defendant was the shooter.[8] We disagree with both contentions.

We have stated that "the primary concern of the trial court when transcripts are used is their accuracy." *State v. Ahmadjian*, 438 A.2d 1070, 1082 (R.I. 1981). "Admission of transcripts into evidence is within the sound discretion of the trial justice." *State v. Briggs*, 886 A.2d 735, 752 (R.I. 2005) (brackets omitted). "The trial justice may conduct a hearing before or during trial in which he reviews the tapes and transcripts." *Ahmadjian*, 438 A.2d at 1082. "If convinced

---

[8] The defendant also asserts that the transcript was rendered inaccurate because it emphasized certain slang words and still contained the original transcriber's certification of accuracy, which was inserted before the transcript was translated. Again, however, defense counsel never objected on these grounds at trial, nor did he bring these specific issues to the attention of the trial justice. Accordingly, the raise-or-waive rule precludes us from addressing these issues on appeal. *See State v. Romero*, 193 A.3d 1167, 1170 (R.I. 2018).

of their accuracy, [the trial justice] may then admit the transcripts, in his [or her] sound discretion." *Id.* "Once transcripts are admitted into evidence, the trial justice should instruct the jurors that they are the final arbiter of their accuracy and reliability and that if the jurors perceive any differences between the tapes and the transcripts, they must rely on the tapes." *Id.* at 1082-83.

After carefully reviewing the record, and in particular the transcript of the ATF call, it is our opinion that the trial justice did not abuse his discretion when he admitted the transcript into evidence. Prior to trial, and in accordance with our holding in *Ahmadjian*, the trial justice reviewed the transcript and determined that there was "some Spanish conversation, which for some reason was not transcribed into English." The trial justice explained that he would not allow the transcript to be used unless the Spanish portions were also translated and included in the transcript, in order to make the transcript complete. The fact that the translation was performed by an employee of the attorney general's office and its accuracy confirmed by Villanueva, one of the prosecution's only three witnesses, hardly inspires confidence in the reliability of the translated transcript. However, the use of Spanish was relatively minor, it was only the confidential informant who spoke in Spanish, defendant had ample opportunity to have the translated transcript reviewed by a court-certified interpreter, and there is no suggestion in the record that the translation was not in fact accurate. Although the better practice would have been to have the non-English portions of the conversation translated by a court-certified interpreter, under these circumstances we are convinced that the trial justice did not abuse his discretion in admitting the transcript into evidence.

Additionally, we do not believe the trial justice abused his discretion by admitting the transcript even though it included defendant's name. Before the transcripts were distributed to

the jury, three eyewitnesses connected defendant to the shooting. Moreover, Villanueva testified that she listened to the recording of the ATF call and that she recognized defendant's voice on the call—an observation she was clearly qualified to render, in that defendant was her husband for seven years, from 2008 until 2015. Similarly, Agent Jardin testified that the confidential informant placed a call to defendant and provided him with a recording of that call. Finally, the content of the ATF recording itself validated the testimony from all three eyewitnesses regarding the shooting.

Most importantly, regarding our determination that he did not abuse his discretion when he admitted the transcript, the trial justice gave two cautionary instructions to the jury. First, the trial justice informed the jurors that "the transcript is not controlling. It is what you hear on the tape or the CD that's controlling. The transcript is simply an aid to assist you as you listen to the recording." Second, just before the jury deliberated, the trial justice reminded them that "the recording is the evidentiary piece that is paramount, and not the transcript. * * * [I]f you hear something on the audio that doesn't correlate with what's on the printed page, it's what you hear that counts." A more specific instruction regarding the use of defendant's name in the transcript was never requested.

Accordingly, we hold that the trial justice did not abuse his discretion when he admitted the transcript of the ATF call into evidence.

**B**

**Motion for a Mistrial**

Next, defendant avers that the trial justice erred by failing to grant a mistrial when it became evident that defense counsel did not possess or review the complete discovery package prior to trial. The defendant claims that defense counsel had only "bits and pieces of discovery

from supplemental disclosures and his representation of [defendant] at the violation hearing," which affected counsel's ability to defend him at trial.

**1**

**Standard of Review**

"It is well settled that 'Rule 16 requires that discovery be made in a timely manner in order that defense counsel may marshal the information contained in the discovery material in an orderly manner.'" *State v. Rosado*, 139 A.3d 419, 424 (R.I. 2016) (deletion omitted) (quoting *State v. Huffman*, 68 A.3d 558, 568-69 (R.I. 2013)). When a trial justice is confronted with an alleged discovery violation, he or she "should examine four factors: (1) the reason for the nondisclosure; (2) the prejudice to the other party; (3) whether or not a continuance can rectify any such prejudice; and (4) any other relevant factors." *Id.* (quoting *State v. Marte*, 92 A.3d 148, 151 (R.I. 2014)).

"The decision to pass a case and declare a mistrial belongs to the trial justice, and this Court gives great weight to his or her sound discretion." *State v. Fry*, 130 A.3d 812, 828 (R.I. 2016) (quoting *State v. Tucker*, 111 A.3d 376, 388 (R.I. 2015)). "As such, this Court will reverse a trial justice's ruling on appeal only if it was clearly wrong." *Id.* (quoting *Tucker*, 111 A.3d at 388). "We give great deference to the trial justice in this regard because he or she has a front-row seat at the trial and is in the best position to determine whether a defendant has been unfairly prejudiced." *Id.* (quoting *State v. Tully*, 110 A.3d 1181, 1191 (R.I. 2015)). "Where a defendant's contention is grounded in [his or] her fair-trial rights * * * 'we shall reverse only for an abuse of discretion that results in actual prejudice to him [or her].'" *Id.* at 829 (quoting *State v. Gomes*, 690 A.2d 310, 318 (R.I. 1997)).

- 17 -

## 2

### Analysis

Our review of the record leads us to the firm conclusion that the trial justice did not abuse his discretion when he denied defendant's request for a mistrial. First, the reason for the nondisclosure was clearly inadvertence, as both the state and defense counsel agreed there was no nefarious activity on the part of the state and the nondisclosure was due to confusion that occurred when defense counsel did not pick up all of the discovery. *See Rosado*, 139 A.3d at 424 (setting out factors when considering alleged discovery violation under Rule 16). Second, the trial justice was in the best position to determine whether defendant was prejudiced by the nondisclosure, and the trial justice found that he was not. The trial justice determined that defense counsel had all the statements from the three eyewitnesses prior to trial, based on the fact that defense counsel had represented defendant at the violation hearing and indeed used that information to impeach all three of those eyewitnesses at trial. The trial justice examined the additional crime scene photographs that defense counsel did not have prior to trial, and he determined that there was no prejudice to defendant by not having them. Although defense counsel did not have Jane's audio statement and the information from defendant's cell phone, the state did not use that material at trial. Further, the trial justice offered defense counsel the opportunity to admit those materials into evidence if he found them helpful, but defense counsel declined the offer. Third, despite finding no prejudice and initially denying defendant's request for a continuance, the trial justice ultimately offered a continuance to recall any witnesses that defense counsel saw fit, albeit at his expense; however, defense counsel declined that offer as well.

Significantly, before this Court, defendant does not provide any basis as to how he was prejudiced by not having certain discovery materials. He merely rehashes a list of discovery materials he did not have prior to trial. The trial justice, however, would have allowed all of these items to be entered into evidence if defense counsel found them to be of value; counsel declined this offer. The trial justice was in the best position to determine whether defendant suffered any prejudice by not having those materials prior to trial and determined that he did not.

Accordingly, there was not clear error in the trial justice's finding that defendant was not prejudiced by the nondisclosure and therefore there is no reason to disturb those findings.

## C

### Motion for a New Trial

The defendant also claims that the trial justice erred when he failed to grant the defendant's motion for a new trial. When reviewing a motion for a new trial, this Court has stated that as long as the trial justice has "articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." *Romero*, 193 A.3d at 1171 (quoting *State v. Phannavong*, 21 A.3d 321, 325 (R.I. 2011)). The only assertion the defendant makes in support of his argument is that the trial justice should have granted a new trial based on the denial of his Rule 16 mistrial motion. Having found no abuse of discretion when denying the mistrial, we see no reason to overturn the trial justice's denial of a motion for a new trial for the same reasons.

## III

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court.  The record shall be returned to that tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

SUPREME COURT – CLERK'S OFFICE

OPINION COVER SHEET

| Title of Case | State v. Alberto Rivera. |
|---|---|
| Case Number | No. 2018-178-C.A.<br>(P1/17-1382AG) |
| Date Opinion Filed | December 11, 2019 |
| Justices | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| Written By | Associate Justice Gilbert V. Indeglia |
| Source of Appeal | Providence County Superior Court |
| Judicial Officer From Lower Court | Associate Justice Robert D. Krause |
| Attorney(s) on Appeal | For State:<br><br>Owen Murphy<br>Department of Attorney General<br><br>For Defendant:<br><br>Kara J. Maguire<br>Office of the Public Defender |