CHARLES E. BLAKE, Trustee, *vs.* ATLANTIC NATIONAL BANK.

MARCH 4, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst and Sweetland, JJ.

(1) *Contracts. Promise for Benefit of Third Party. Assent. Bankruptcy.*
While the right of a third person to enforce a promise made by one person to another for the benefit of said third person, although the consideration does not move from such third person and although he was not cognizant of the

promise when it was made, is well recognized, yet he acquires no rights under the promise until he accedes to it, and before such accession on his part, his right may be lost either by revocation or release between the parties to the agreement or by the intervention of the rights of others.

Such assent to be effective must be given before the bankruptcy of the promissor.

In an action to recover funds alleged to have been retained by defendant and applied to a firm obligation, evidence considered and:—

*Held*, to establish an original co-partnership indebtedness and not an indebtedness assumed by the firm.

ASSUMPSIT.    Heard on exceptions of defendant, and sustained.

SWEETLAND, J.    This is an action in assumpsit brought by Charles E. Blake, trustee in bankruptcy of N. Curtis Fletcher & Company, a co-partnership composed of N. Curtis Fletcher and W. R. Potter, against the Atlantic National Bank.    The case was tried before a justice of the Superior Court sitting without a jury.    The case is now before this court upon the defendant's exception to the decision in favor of the plaintiff.

In September, 1907, the said N. Curtis Fletcher signed his own name to an underwriting agreement as to certain bonds of the United Illuminating Company.    Other persons also signed this agreement.    By the terms of the agreement each person signing became obligated to the Atlantic National Bank for the amount set opposite his name in consideration of a loan made by the bank to the nominee of the underwriters.    The amount set opposite the name of N. Curtis Fletcher was $1,700.

By the testimony of Mr. Fletcher he signed the underwriting agreement in behalf of the co-partnership.    In the early part of November, 1907, Mr. Potter was considering a dissolution of the firm; and Mr. Fletcher demanded from him that he should sign an acknowledgment that the obligation on the underwriting agreement, arising from the signature of Mr. Fletcher, was a firm obligation.    Mr. Potter

testified that up to that time he had understood that the underwriting agreement was an individual transaction of Mr. Fletcher. After considerable controversy between the partners, Mr Potter signed the acknowledgment which was dated as of the date of the underwriting agreement. In this written acknowledgment Mr. Potter agreed that the signature of Mr Fletcher upon the underwriting agreement "shall be and is hereby assumed by N. Curtis Fletcher & Company." The said partnership was not dissolved at that time.

On January 28th, 1908, N. Curtis Fletcher & Company obtained a loan from the Atlantic National Bank, the defendant, and gave to said bank the firm's promissory note for $5,800 payable on demand. The firm deposited and pledged with the bank as collateral security for the payment of said note certain shares and a bond of the United States Steel Corporation. In said note the co-partnership gave to the bank authority to sell the collateral security at public or private sale on nonpayment of the note to apply the net proceeds of such sale to the payment of the note; and also to apply the surplus of such net proceeds after payment of said note to the payment of any other note or claim against said firm held by the bank.

On February 7th, 1908, said co-partnership was adjudged bankrupt and the plaintiff was appointed the trustee in bankruptcy of said co-partnership. After the bankruptcy the defendant was informed by Mr. Fletcher that the underwriting obligation arising from his signature upon the underwriting agreement was a firm obligation and the defendant also received from Mr. Fletcher a copy of the above-mentioned written acknowledgment of Mr. Potter.

After the bankruptcy of the co-partnership the defendant sold said collateral security and from the net proceeds of the sale satisfied the indebtedness upon said note for $5,800, and also satisfied the obligation of $1,700 upon the underwriting agreement. The plaintiff protested against the action of the bank in treating said claim for $1,700 as firm

indebtedness and has brought this action to recover the balance of the net proceeds of the sale of said collateral security remaining after the payment of the note of $5,800 and interest thereon.

The plaintiff claims that the indebtedness of $1,700 in question was originally the individual obligation of Mr. Fletcher and that the paper signed by Mr. Potter in November, 1907, is, at most, merely evidence of an assumption by the firm of that individual indebtedness of a partner. This was the finding of the justice of the Superior Court. The defendant urges, that, even if this is the conclusion properly to be drawn from the testimony and although the defendant was not aware of the assumption by the firm of the partner's individual obligation until after the bankruptcy of the firm, and hence its assent must have been given after the bankruptcy, still the assent when it was given would make the bank a creditor of the firm from the time of the assumption; and the bank would be entitled to apply the balance of the proceeds of the sale of said collateral security in satisfaction of this claim of $1,700, as an obligation of the firm, under the authorization contained in the note given by the firm to the (1) bank. The defendant bases its contention upon the authority of the Rhode Island cases, which uphold the right of a third person to enforce a promise made by one person to another for the benefit of said third person, although the consideration does not move from such third person and although he was not cognizant of the promise when it was made. This court has frequently recognized such a doctrine. *Urquhart* v. *Brayton*, 12 R. I. 169; *Merriman* v. *Social Manuf. Co.*, 12 R. I. 175; *Wood* v. *Moriarty*, 15 R. I. 518; *Wood* v. *Moriarty*, 16 R. I. 201; *Munroe* v. *Firemen's Relief Assoc'n*, 19 R. I. 363, *Smith* v. *Union Insurance Co.*, 25 R. I. 260; *Gould* v. *United Traction Assoc'n*, 26 R. I. 142. However, the third person acquires no rights under the promise made for his benefit until he accedes to it. It must clearly appear by suit brought upon the agreement or in some other manner, that the third person knows of the

promise in his favor, or the assumption by a stranger of the debt due to him, accepts the new agreement and assents to its terms. Until such circumstances appear, showing accession on his part, the third person is not in position to avail himself of any benefit under the agreement. Before such accession on his part, his right to insist upon the performance of the promise in his favor may be lost by revocation or release between the parties to the agreement or by the intervention of the rights of others; *Wood* v. *Moriarty*, 16 R. I. 201. Such assent to be effective must be given before the bankruptcy of the promisor. This view is in accord with the general doctrine of the Rhode Island cases as to the position of the beneficiary under such promise before his assent to it. It also agrees with the great weight of authority that the indebtedness of a bankrupt may not be increased in this manner after bankruptcy. *In re Isaacs*, 13 Fed. Cases, 148.

We are of the opinion that if the indebtedness of $1,700 to the defendant bank is to be regarded as the individual obligation of the partner Fletcher, assumed by the firm, the assent on the part of the bank to such an arrangement made after the firm's bankruptcy will not constitute the defendant a creditor of the firm; and that the defendant cannot be permitted to use the firm's property, in the defendant's hands at the time of the bankruptcy, to satisfy such indebtedness.

We think, however, that it is established by the testimony that the obligation arising from the underwriting agreement was an indebtedness of the co-partnership originally and not an indebtedness assumed by the firm. The partner Fletcher who signed the agreement testified that in doing so he acted for the firm and that the obligation was always that of the co-partnership. The partner Potter does not deny that it was in fact a firm obligation. The limit of his testimony in that regard is, that up to the time of signing the letter of acknowledgment in November, 1907, he "understood it as individual underwriting." There was a long interview be-

tween the partners in November, 1907, when Mr. Potter had the intention of withdrawing from the firm and as a result of that conference, in which the matter must have been thoroughly considered, Mr. Potter signed the letter addressed not to the Atlantic National Bank, but to his partner, Mr Fletcher. In this letter Mr. Potter agrees that "your signature on the agreement with the Atlantic National Bank" . . . "shall be and is hereby assumed by N. Curtis Fletcher & Co." Although the language of the letter is that the "signature" of Mr. Fletcher is assumed, the circumstances show that the letter was not intended by the partners as the assumption by the firm of a new obligation, but as an acknowledgment or ratification of the act of Mr. Fletcher in a transaction, which he had always regarded as part of the firm's business. According to the testimony of the partner Potter, the business of the firm, which was that of a banker and broker, was divided into two departments. One of these which the witness calls the "New York end" was under his charge. He testified that he "had very little to do with the corporate end, with the corporation. My end was the New York end." "C. Q. 38. You were the inside man? Ans. I had the New York end. C. Q. 39. Mr. Fletcher was interested in these various companies, a director was he not? Ans. That was his department, yes." This testimony is corroborative of the testimony of Mr. Fletcher and explains that, though the underwriting agreement was signed in furtherance of the co-partnership business, the details were not known to Mr. Potter as they belonged to Mr. Fletcher's department with which he "had very little to do." Mr. Potter also testified that the firm did not receive any consideration for his signature upon the letter in question. It is, therefore, quite unlikely, when the partner Potter believed that he was about to retire from the firm, that without consideration he would have agreed to increase the indebtedness of the firm by assuming the individual debts of his partner and thus reduce the value of his own share in the co-partnership. It is more in accord

with probability that at this conference in November, 1907, he learned the true nature of the underwriting obligation and signed the said letter as a ratification of the act of his partner performed for the firm.

In the transcript we find no contradiction of the testimony of Mr. Fletcher, while the circumstances of the case strongly corroborate him. Decision should have been for the defendant upon the facts of the case.

Opportunity will be given to the plaintiff on March 11th, 1912, to show cause why the case should not be transmitted to the Superior Court with direction to enter judgment for the defendant for costs.

*Gardner, Pirce & Thornley,* for plaintiff.   *Charles R. Haslam,* of counsel.

*John S. Murdock, Percy W. Gardner,* for defendant.