CATHAY CATHAY, INC., et al.

v.

VINDALU, LLC d/b/a Gourmet
India et al.

No. 2007–183–Appeal.

Supreme Court of Rhode Island.

Jan. 9, 2009.

John J. DeSimone, for Plaintiff.

R. Bart Totten, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The plaintiffs, Cathay Cathay, Inc., and Surf & Turf Grille, Inc. (plaintiffs), appeal from a judgment entered in favor of the defendant, Vindalu, LLC d/b/a Gourmet India (Gourmet India). This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we

conclude that this appeal may be resolved without further briefing or argument. For the reasons set forth below, we affirm in part and vacate in part the judgment of the Superior Court.

## Facts and Procedural History

This case arises from a dispute between competing food-court vendors at the Providence Place Mall. On December 29, 1995, Providence Place Group, LP (Providence Place), the predecessor in interest to Rouse Providence, LLC (Rouse), entered into a leasehold agreement with Cathay Cathay, Inc., for the operation of a Chinese restaurant in the food court. Included among the terms of this lease was the exclusive right of Cathay Cathay, Inc., to serve certain listed menu items, including "white rice- boiled or steamed" either "alone or in combination with any other foods." On November 10, 2000, David Chu, the owner of Cathay Cathay, entered into a leasehold agreement with Providence Place to operate a second restaurant in the food court under the name of Surf & Turf Grille, Inc. (Surf & Turf). This lease also granted Surf & Turf an exclusive right to sell "oriental style" menu items defined both broadly as "foods that are distinctly part of [o]riental cuisine" and more specifically by an accompanying list that closely mirrored the Cathay Cathay list.[1] The sole distinction between these lists was that Surf & Turf was granted the exclusive right to sell the more general item "rice-boiled or steamed."

The record indicates that Gourmet India entered into a leasehold agreement with Rouse, dated January 7, 2005,[2] to operate

---

**1.** This right exempted "any tenants having a lease predating the date of this Lease and operating in the Shopping Center as of the date of this Lease or any replacement tenant with a similar use to such tenants."

**2.** It appears from the record that the January 7, 2005 lease was entered into by Rouse Providence LLC as landlord and "India House of Burlington, Inc., a Massachusetts corporation, t/a Gourmet India" as tenant. On April 5, 2005, the tenant assigned the lease to "Vin-

an Indian style restaurant in the food court. The focus of the parties' dispute is section 1.1(F.) of this lease, which stated in relevant part:

"Tenant is expressly prohibited from offering for sale at the Premises white rice or fried rice. In addition, Tenant is expressly prohibited from selling Oriental style foods, including but not limited to those items listed on Exhibit 'I' attached to this Lease and incorporated herein by reference and any other foods that are distinctly part of Oriental cuisine served in Oriental (i.e. Chinese, Japanese, Malaysian, Thai, Korean, [F]ilipino, Vietnamese, etc.) restaurants and any foods or dishes substantially similar thereto to [sic] in taste, appearance[,] style and/or ingredients, whether or not styled or denominated as an Oriental food dish."

Exhibit I contained a list of food items that Gourmet India was prohibited from offering for sale, including "rice—boiled or steamed." The list was virtually identical to the food items that Cathay Cathay and Surf & Turf previously had been granted an exclusive right to sell. Section 1.1(F.) also stated, however, "[n]otwithstanding anything to the contrary contained in Exhibit 'I' Landlord warrants that Tenant's incidental sale or use of Basmati Rice as a side dish or ingredient shall not be deemed a violation of the prohibition of the sale of rice."

Mr. Chu notified both Rouse and Gourmet India of plaintiffs' exclusive rights to sell white rice in a letter dated June 12, 2005. Several months after Gourmet India began operating at the food court on June 18, 2005, plaintiffs brought an action against it in the Superior Court seeking injunctive relief and compensatory damages.[3] The plaintiffs later filed an amended complaint, advancing two theories of recovery against Gourmet India. First, they averred a third party contractual interest in the lease between Rouse and Gourmet India and sought to enforce the provisions of the lease, which, plaintiffs claimed, prohibited Gourmet India from selling any form of white rice. Secondly, they alleged that Gourmet India tortiously interfered with their leases with Rouse by knowingly contracting to sell white rice in violation of plaintiffs' exclusive rights to sell certain food items.

On November 30, 2005, at the conclusion of the first day of testimony on a hearing for preliminary injunction, the trial justice indicated his interest in consolidating the hearing with the trial on the merits under Rule 65 of the Superior Court Rules of Civil Procedure and asked for the parties' responses.[4] The next day the trial justice consolidated under Rule 65 without objection by any party.

During the trial, plaintiffs offered the testimony of N. Irving Lemack, who was qualified as an expert in food analysis. Mr. Lemack testified that he purchased a

dalu, LLC, a Rhode Island limited liability company."

3. The plaintiffs also named as defendants another vendor, Japan Café of Providence Place, Inc., and its landlord Rouse Providence, LLC. As neither defendant is party to this appeal we do not find occasion to discuss the claims against them further.

4. Rule 65(a)(2) of the Superior Court Rules of Civil Procedure states:

"An application for a preliminary injunction shall be heard on evidence or affidavits or both at the discretion of the court. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."

rice dish at Gourmet India and examined it organoleptically [5] by tasting it and analyzing it under magnification. According to Mr. Lemack, the rice that he purchased at Gourmet India was white rice that had been colored yellow. He further stated that basmati rice is a genetic variety of rice characterized by its distinctive aromatic qualities, and that, as with all rice, it may be either brown or white.[6] Mr. Lemack testified that he took no note of the aromatic qualities of the rice from Gourmet India, and thus offered no opinion whether the rice he purchased was, in fact, basmati rice.

During his testimony, Mr. Chu conceded that his principle motivation for specifically itemizing the food enjoying exclusivity was to protect his businesses from rivals who had previously circumvented his exclusive rights at other malls by offering "oriental style" meals under deceptive characterizations such as "Cajun" style. He further acknowledged that several other food court vendors offered menu items that included white rice, but that he refrained from objecting because "their concept is completely different [from] us." What provoked Mr. Chu's ire toward Gourmet India was its practice of selling rice as part of combination meals similar to the manner in which "oriental style" cuisine is offered, as well as its close proximity to Cathay Cathay's booth.

At the conclusion of plaintiffs' evidence, Gourmet India moved for judgment on partial findings under Rule 52(c) of the Superior Court Rules of Civil Procedure, arguing that the plain language of its lease permitted the sale of basmati rice and that plaintiffs had failed to show any wrongful conduct necessary to sustain its tortious interference with contractual relations claim.[7] The trial court rejected plaintiffs' contention that the relevant terms could plainly be read harmoniously as permitting only the sale of brown basmati rice. The court opined that Mr. Chu's "real interest" was to protect plaintiffs' status as sole vendors of "oriental style" cuisine and that traditional Indian cuisine could not reasonably be construed as a subcategory of "oriental style" food. The trial justice further concluded that it was not "the intent of the parties to the contract between Mr. Chu and the mall to encompass Basmati rice." The trial justice then granted Gourmet India's motion for a judgment on partial findings and, on January 27, 2006, entered a final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. The plaintiffs timely appealed.

**5.** The American Heritage Dictionary of the English Language 1240 (4th ed.2000) defines "organoleptic" as "[i]nvolving the use of sense organs."

**6.** According to Mr. Lemack, the distinction between brown and white rice has more to do with the milling process than with color. When rice is harvested, the paddy rice is either parboiled or allowed to dry. The husks are then removed, resulting in brown rice. It may also be further milled to remove the bran and germ, leaving only the endosperms, which is known as white rice.

**7.** Rule 52(c) of the Superior Court Rules of Civil Procedure states in relevant part:

*"Judgment on Partial Findings.* If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule. In lieu of ordering judgment as a matter of law, the court, on motion or on its own initiative, may order the action dismissed without prejudice on such terms and conditions as are just."

## Standard of Review

 "A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Town of West Greenwich v. A. Cardi Realty Associates,* 786 A.2d 354, 357–58 (R.I.2001) (citing *Forte Brothers, Inc. v. Ronald M. Ash & Associates, Inc.,* 612 A.2d 717, 721 (R.I. 1992)). Otherwise, we are deferential to the trial justice's findings of fact and give them great weight. *Barone v. Cotroneo,* 711 A.2d 648, 649 (R.I.1998) (mem.). We will, however, review pure questions of law that have been presented on appeal on a *de novo* basis. *Manchester v. Pereira,* 926 A.2d 1005, 1011 (R.I.2007) (citing *Dellagrotta v. Dellagrotta,* 873 A.2d 101, 109 (R.I.2005); *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001)).

## Discussion

 At the outset we note that the trial justice applied an incorrect standard in ruling upon Gourmet India's Rule 52(c) motion for judgment on partial findings when he observed "[o]f course, on this motion I must take and draw every inference most favorable to the plaintiff." In a trial without a jury, however, a trial justice is not required to view the evidence in the light most beneficial to the nonmoving party when considering a motion for judgment as a matter of law. *Broadley v. State,* 939 A.2d 1016, 1020 (R.I.2008). Rule 52(c) permits a trial justice to enter judgment against a party who "has been fully heard on an issue" in a nonjury trial, "and the court finds against the party on that issue." Accordingly, a trial justice must assess the credibility of witnesses and weigh the evidence presented by the non-moving party. *Broadley,* 939 A.2d at 1020. Any such judgment, however, must be supported by findings of fact and conclusions of law. *See* Rule 52(a).[8] Although the trial justice applied the incorrect standard in this case, we deem the error to be harmless. This is because the standard he articulated, to wit, "I must take and draw every inference most favorable to the plaintiff," was more advantageous to plaintiffs than that required by Rule 52(c). *See Broadley,* 939 A.2d at 1020.

 The plaintiffs first argue on appeal that the trial justice erred in entering judgment in favor of Gourmet India on their contractual claims. To prevail on a third-party beneficiary theory, plaintiffs must first show that they are the intended beneficiaries of the lease between Rouse and Gourmet India, and in particular section 1.1(F.) of the lease that prohibits the sale of "white rice or fried rice." *See* 2 Restatement (Second) *Contracts* § 302 (1981). This Court has long upheld "the right of a third person to enforce a promise made by one person to another for the

8. Rule 52(a) provides:

"*Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. The findings of a master, to the

extent that the court adopts them, shall be considered as the findings of the court. It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 59 and subdivision (c) of this rule."

benefit of said third person, although the consideration does not move from such third person and although he was not cognizant of the promise when it was made." *Blake v. Atlantic National Bank,* 33 R.I. 464, 467, 82 A. 225, 226 (1912); *see Davis v. New England Pest Control Co.,* 576 A.2d 1240, 1242 (R.I.1990) ("When one party for valuable consideration, engages another by contract to do some act for the benefit of a third party, the latter who would enjoy the benefits, may maintain an action for breach of contract."). This right of enforcement, however, is subject to any limitations imposed by the terms of the contract. 2 Restatement (Second) *Contracts* § 309 (1981); *see Campione v. Wilson,* 422 Mass. 185, 661 N.E.2d 658, 663–64 (1996) (third-party beneficiary " 'stands in the shoes' " of the promisee).

 The trial justice began his analysis by observing that "while, indeed, the language of the documents is crucial in many ways, what is just as important is the intent of the parties * * *." This, however, is a clear misstatement of the applicable law. The language employed by the parties to a contract is the best expression of their contractual intent, and when that language is "clear and unambiguous, words contained therein will be given their usual and ordinary meaning and the parties will be bound by such meaning." *Singer v. Singer,* 692 A.2d 691, 692 (R.I. 1997) (mem.) (citing *Aetna Casualty & Surety Co. v. Graziano,* 587 A.2d 916, 917 (R.I.1991)). Whether a contract's terms are ambiguous is a question of law. *Dubis v. East Greenwich Fire District,* 754 A.2d 98, 100 (R.I.2000); *Rotelli v. Catanzaro,* 686 A.2d 91, 94 (R.I.1996). A contract may be deemed ambiguous only if "it is reasonably and clearly susceptible of more than one interpretation." *Rotelli,* 686 A.2d at 94. "[I]n determining whether a contract is clear and unambiguous, the docu-

ment must be viewed in its entirety and its language be given its plain, ordinary and usual meaning." *Rubery v. Downing Corp.,* 760 A.2d 945, 947 (R.I.2000) (quoting *Rotelli,* 686 A.2d at 94). Additionally, we have consistently held that "[i]n situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids." *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill,* 652 A.2d 440, 443 (R.I.1994) (citing *Greenwald v. Selya & Iannuccillo,* Inc., 491 A.2d 988, 989 (R.I.1985)). Unambiguous contract language, therefore, renders the parties' intent irrelevant. *Hilton v. Fraioli,* 763 A.2d 599, 602 (R.I.2000).

Here, the trial justice considered evidence adduced at trial in determining the issue of intent without first making the requisite finding of ambiguity. Moreover, he considered only the intent of David Chu, the purported third-party beneficiary, who was neither a direct party to, nor involved in the negotiation of, the lease between Rouse and Gourmet India, the sole lease at issue in the Rule 52(c) motion. The germane issue before the court, however, assuming it had found an ambiguity in the said lease, was whether, and to what extent, Rouse and Gourmet India intended to benefit plaintiffs by prohibiting the sale of "rice—boiled or steamed" except for the "incidental sale or use of Basmati Rice."

 Although the trial justice did not make a finding relative to plaintiffs' status as third-party beneficiaries, there is evidence in the record that would support such an inference. Assuming without deciding, however, that plaintiffs are indeed third-party beneficiaries, it availeth them naught. Our *de novo* review of the relevant provisions of the lease uncovers no ambiguity. We interpret the critical

clause of Section 1.1(F.) [9] as a guaranty by Rouse to Gourmet India that it may sell basmati rice, thereby clearly granting permission to Gourmet India to sell basmati rice in all its forms, whether white or brown. The preposition "notwithstanding" is generally defined as "in spite of" [10] and connotes an intent to modify substantively the statement that has preceded it. We conclude, therefore, that in the context of Gourmet India's lease the sale or use of basmati rice is excluded from the general prohibition of the sale of "white rice or fried rice."

As plaintiffs' purported rights as third-party beneficiaries are confined to enforcing the terms of the lease, *see Campione,* 661 N.E.2d at 663–64; 2 Restatement (Second) *Contracts* at § 309, it is clear to us that they would not be entitled to an injunction against Gourmet India preventing it from selling white basmati rice. We are thus satisfied that judgment was entered appropriately in favor of Gourmet India on plaintiffs' third-party beneficiary claim. *See State v. Pena Lora,* 746 A.2d 113, 118 (R.I.2000) (noting Court may exercise "its prerogative to affirm a determination of a [trial] justice * * * on grounds different from those enumerated in his or her decision").

▮▮▮▮ The plaintiffs also contend on appeal that the trial justice erred by entering judgment for Gourmet India under Rule 52(c) on plaintiffs' claim of tortious interference.[11] In granting the motion, the trial justice simply said, "there is nothing in the contract between Gourmet India and the mall to suggest that they were trying to somehow subvert or undermine the exclusive that Mr. Chu enjoyed as a result of his lease with the mall." It is true that a trial justice "need not engage in extensive analysis and discussion of all the evidence" when rendering a decision in a non-jury trial; indeed, "[e]ven brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." *Donnelly v. Cowsill,* 716 A.2d 742, 747 (R.I.1998) (quoting *Anderson v. Town of East Greenwich,* 460 A.2d 420, 423 (R.I.1983)). Nevertheless, it is our opinion that in this case the trial justice's conclusory statement concerning plaintiffs' tortious interference claim is insufficient to satisfy the requirements of Rule 52(c) that any judgment thereunder be supported by findings of fact and conclusions of law.

▮▮▮▮ Rule 52(c), in conjunction with Rule 52(a), requires that in a trial without a jury, any judgment entered as a matter of law be supported by facts found specially and conclusions of law stated separately. "To satisfy the demands of Rule 52(a), a trial court must do more than announce statements of ultimate fact. The court must support its rulings by spelling out the subordinate facts on which it relies." *Damon v. Sun Co.,* 87 F.3d 1467, 1481 (1st Cir.1996) (quoting *U.S. for Use of Belcon, Inc. v. Sherman Constr. Co.,* 800 F.2d 1321, 1324 (4th Cir.1986)). In the case under review, we are unable to deduce the

---

**9.** Section 1.1(F.) of the lease states in part: "[n]otwithstanding anything to the contrary contained in Exhibit 'I' Landlord warrants that Tenant's incidental sale or use of Basmati Rice as a side dish or ingredient shall not be deemed a violation of the prohibition of the sale of rice."

**10.** *See, e.g.,* the American Heritage Dictionary of the English Language 1203 (4th ed.2000), and The Oxford Dictionary and Thesaurus, American Edition 1018 (1996).

**11.** The plaintiffs also argue that the trial justice failed to give them adequate notice that the consolidated hearing included the claim of tortious interference. Because we are remanding the case for a new trial on said claim, we need not address the issue further.

factual predicate of the judgment in favor of Gourmet India on the plaintiffs' tortious interference claim without the benefit of credibility determinations and factual findings. Without commenting on the evidence, we simply would suggest that evidence was presented from which a factfinder could infer the existence of facts necessary to support a claim of tortious interference with the plaintiffs' exclusive rights under their respective leases.

### Conclusion

Accordingly, we vacate the judgment and remand the record to the Superior Court with instructions to enter a new judgment in favor of Gourmet India on the plaintiffs' contractual claims for injunctive relief and damages. We further instruct the Superior Court to conduct a new trial on the plaintiffs' claims of tortious interference by Gourmet India.