June 3, 2025

**Supreme Court**

No. 2023-154-Appeal.
(PB 11-2488)

(Concurrence and Dissent
begins on Page 22)

Cashman Equipment Corporation, Inc.  :

v.                     :

Cardi Corporation, Inc., et al.       :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Cashman Equipment Corporation, Inc.   :

v.                          :

Cardi Corporation, Inc., et al.[1]         :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The replacement of a bridge is an

enterprise often fraught with contention.  This case concerns alleged construction

defects in marine cofferdams used to replace the Sakonnet River Bridge, linking the

towns of Portsmouth and Tiverton.  The plaintiff, Cashman Equipment Corporation,

Inc. (Cashman), appeals from a judgment of the Superior Court, in favor of the

defendant, Specialty Diving Services, Inc. (SDS), on the plaintiff's claims for breach

of contract and for indemnity and contribution.  Cashman also appeals from an award

of attorneys' fees to SDS.  This case came before the Supreme Court pursuant to an

order directing the parties to appear and show cause why the issues raised in this

---

[1] This case, which was initiated in 2011, involved only one plaintiff, Cashman Equipment Corporation, Inc., but multiple defendants were added over the course of several years.  The only defendant in this appeal is Specialty Diving Services, Inc.

appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we affirm the amended judgment of the Superior Court.

## I

## Facts and Travel

This case involves several parties and several disputes related to the construction of the Sakonnet River Bridge. At issue here is the conflict between two of those parties, Cashman and SDS. As such, we recite only the facts pertaining to that dispute.

Cardi Corporation, Inc. (Cardi) was the prime general contractor engaged for the construction of the Sakonnet River Bridge. Cardi hired Cashman to construct some of the substructures of the bridge, which included the construction of marine cofferdams.[2] Specifically, Cashman was to "furnish[], install[], and remove[]" three marine cofferdams.

Cashman then contracted with SDS to perform certain underwater aspects of the cofferdam installation. Upon inspection, Cardi identified several alleged

---

[2] According to a decision of the trial justice, "'[a] marine cofferdam is a temporary, watertight enclosure built in the water for specialized construction.' * * * The design and construction of marine cofferdams were 'key portions' of the [p]roject." (Brackets omitted.)

deficiencies in the cofferdams that required substantial repairs. Cardi then sought to hold Cashman responsible for the alleged deficiencies. Cashman, however, believed that it "ha[d] performed its obligations [to Cardi] pursuant to the terms of the [contract]" and that Cardi had not "fully compensated" Cashman for the work it performed. In May 2011, Cashman sued Cardi, asserting, among others, claims for breach of contract, unjust enrichment, and quantum meruit; Cardi, in turn, asserted several counterclaims, alleging that Cashman's construction of the cofferdams was deficient.

In June 2014, Cashman added SDS as a defendant and asserted a breach-of-contract claim and an indemnification and contribution claim against SDS in the event that Cashman was found liable to Cardi. Cashman alleged that SDS failed "to construct the underwater components and the tremie floor in accordance with the approved plans," "fail[ed] to notify [Cashman] of obvious underwater deficiencies," and therefore breached a contract that required "SDS to perform all underwater aspects of the [m]arine [c]offerdam installation * * *." Relevant to the discussion here, Cashman's argument at trial hinged on four specific theories supporting its alleged breach-of-contract claim:

> (1) that SDS used concrete bags to seal the gaps between the closure plates and pipe piles;
>
> (2) that SDS made certain unauthorized modifications to the marine cofferdam frame after it was placed under water;

- 3 -

(3) that the concrete slab was less than the thickness in the design; and

(4) that SDS had undertaken underwater dive inspections and failed to notify Cashman of certain deficiencies.

Three years after adding SDS as a defendant, but years before the case actually proceeded to trial, Cashman filed for bankruptcy in the United States Bankruptcy Court for the District of Massachusetts in June 2017. Cashman represents that approximately a year and a half later, in December 2018, the bankruptcy court approved Cashman's plan of reorganization and discharged all debts arising before the effective date of the plan. The parties do not contest that, at the time of the bankruptcy and reorganization, SDS did not file or assert any claim against Cashman with the bankruptcy court.

In April 2019, prior to the close of discovery but after Cardi had completed its expert reports, SDS filed a motion for summary judgment. In its motion, SDS argued that, because "[Cashman's] claims [were] clearly [pled] as derivative of Cardi's allegations[,]" and because Cardi had completed its expert reports, summary judgment was appropriate. SDS submitted that the "undisputed facts" presented by both Cashman's and Cardi's experts demonstrated that Cardi did not have a negligence claim "with regard to the very specific and limited dive support provided by SDS * * *."

- 4 -

The trial justice denied the motion, finding that Cashman had met the burden of proving there were genuine disputes of material fact sufficient to get by the summary-judgment phase. Specifically, the trial justice noted that, "[b]y relying on competing affidavits, deposition testimony, and other documents, the parties are asking this [c]ourt to weigh the evidence and make credibility determinations. Credibility determinations and evidence weighing are clearly prohibited at the summary judgment stage."

In October 2019, the case proceeded to a jury-waived trial, spanning more than forty days, at which hundreds of exhibits were presented and eighteen witnesses gave testimony. After the conclusion of Cashman's case-in-chief, SDS moved for judgment as a matter of law under Rule 52(c) of the Superior Court Rules of Civil Procedure. After conducting a hearing on the matter, the trial justice issued a bench decision in which she granted the motion, finding that Cashman had "failed to establish that SDS had breached any obligations owed to Cashman, and [that] SDS was entitled to judgment as a matter of law * * *."[3]

Shortly thereafter, SDS moved for attorneys' fees pursuant to G.L. 1956 § 9-1-45. In its motion, SDS asked only for attorneys' fees and costs, not

---

[3] Although we possess the transcript of the hearing on the motion for judgment as a matter of law, we were not provided with a transcript of the hearing at which the trial justice issued her bench decision on the motion. The quoted language is from a later decision in which she cites her bench decision.

prejudgment interest. The trial justice granted the motion, finding that "Cashman's [first two] claims against SDS were unsupported by any evidence on the record[,]" "the evidence clearly demonstrated that Cashman's [third] claim [] [against SDS] [was] outside the scope of SDS's contract and the alleged breach was the result of other contractors[,]" and that "Cashman presented inconsistent and non-credible evidence as to [its final claim]." As such, she reasoned that "Cashman failed to provide any 'validly raised and amply supported questions of fact and law' in its claims against SDS * * * [and] [t]herefore, there was a complete absence of a justiciable issue of fact or law raised by Cashman." (Quoting *ADP Marshall, Inc. v. Noresco, LLC*, 710 F. Supp.2d 197, 241 (D.R.I. 2010).) She then ordered the parties to enter into mediation over the issue of attorneys' fees and costs. The parties thereafter entered a joint stipulation; however, the amount stipulated did not include prejudgment interest. On August 6, 2021, the trial justice issued an order awarding SDS attorneys' fees in the amount stipulated, $224,671.14; this amount still did not include prejudgment interest.

Thereafter, SDS moved for entry of final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. On February 18, 2022, the trial justice denied the motion, explaining that she found reason for just delay because "Cashman's claims against SDS implicated many of the same factual issues at the heart of Cashman and Cardi's dispute" and that dispute was still pending. In

November 2022, SDS presented a renewed motion for final judgment. This time, the trial justice granted the motion. SDS prepared and submitted an order of final judgment, which the trial justice entered on February 15, 2023. The judgment, however, included an award for not just attorneys' fees in the amount of $224,671.14 but, additionally, for prejudgment interest in the amount of $42,687.52. Cashman then filed a timely appeal.

Before the appeal was docketed in this Court, Cashman filed a motion to vacate the final judgment pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure, arguing that the final judgment issued differed materially from the judgment initially proposed by SDS and reviewed by Cashman and admitting that it had not noticed the discrepancy when SDS submitted the approved order. This Court issued an interim remand for the trial justice to consider solely the motion to vacate the final judgment. In August 2023, the trial justice issued an amended final judgment awarding attorneys' fees but no prejudgment interest to SDS.

## II

## Standard of Review

This Court has held "that the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Luis v. Gaugler*, 185 A.3d 497, 502 (R.I. 2018) (quoting *Fravala v. City of*

*Cranston ex rel. Baron*, 996 A.2d 696, 704 (R.I. 2010)). "A trial justice's findings on questions of law, however, are reviewed *de novo*." *Estrella v. Janney Montgomery Scott LLC*, 296 A.3d 97, 106 (R.I. 2023) (quoting *Town Houses at Bonnet Shores Condominium Association v. Langlois*, 45 A.3d 577, 581 (R.I. 2012)).

## III

## Discussion

Cashman raises four issues on appeal. First, Cashman asserts that the trial justice erred by granting judgment as a matter of law in favor of SDS. Specifically, Cashman contends that this error applies to both Cashman's breach-of-contract claim and its indemnity and contribution claim. Second, Cashman avers that the trial justice abused her discretion in awarding attorneys' fees to SDS. Third, Cashman argues that, even if the award of attorneys' fees is affirmed, the final judgment is void under the United States Bankruptcy Code. Finally, Cashman submits that SDS is not entitled to prejudgment interest on the attorneys' fees. Because the parties no longer dispute the issue of prejudgment interest, this Court need only address Cashman's first three claims of error.

## A. Judgment as a Matter of Law

We first address Cashman's contention that the trial justice erred in granting judgment as a matter of law under Rule 52(c) of the Superior Court Rules of Civil Procedure. On appeal, Cashman argues that the trial justice erred in regard to both

its breach-of-contract claim and its indemnity and contribution claim. As identified *supra*, at trial Cashman presented four theories as to its breach-of-contract claim. On appeal, however, Cashman argues only the issue related to inspections—that SDS "undertook two underwater dive inspections" and that SDS failed to notify Cashman of construction defects that existed at the time of the inspections. This failure to notify, Cashman contends, was a material breach of contract that precluded the trial justice from finding in favor of SDS.

Regarding its indemnity and contribution claim, Cashman argues that, in addition to the failure to notify, SDS "negligently performed work on the cofferdams." This negligence, Cashman contends, is a tort that makes SDS liable for indemnity and contribution under either Rhode Island's Uniform Contribution Among Tortfeasors Act or a theory of equitable indemnification. Cashman argues that Cardi's final expert witness, George Tamaro, had relevant testimony to this point and that, because the trial justice granted SDS's motion before reviewing Tamaro's deposition, she committed reversible error.[4]

---

[4] Cashman represents that Mr. Tamaro's deposition testimony and related exhibits were admitted into evidence by agreement of the parties on the same day that the trial justice granted SDS's motion for judgment as a matter of law. On appeal, Cashman submits that such testimony was relevant to its claims against SDS, yet the trial justice did not have a meaningful opportunity to consider Tamaro's testimony and exhibits.

"In reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court is bound to follow the same rules and legal standards as govern the trial justice." *Sousa v. Roy*, 243 A.3d 775, 779 (R.I. 2021) (quoting *Lemont v. Estate of Ventura*, 157 A.3d 31, 36 (R.I. 2017)). Ordinarily, "[t]he trial justice, and consequently this Court, must examine the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." *Id.* at 779-80 (quoting *Lemont*, 157 A.3d at 36). "In a trial without a jury, however, a trial justice is not required to view the evidence in the light most beneficial to the nonmoving party when considering a motion for judgment as a matter of law." *Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 745 (R.I. 2009). Instead, "[r]ule 52(c) permits a trial justice to enter judgment against a party who 'has been fully heard on an issue' in a nonjury trial, 'and the court finds against the party on that issue.' Accordingly, a trial justice [sitting without a jury] must assess the credibility of witnesses and weigh the evidence presented by the nonmoving party" when deciding on a motion for judgment as a matter of law. *Id.*

Important to our review of the trial justice's decision to grant judgment as a matter of law in favor of SDS, we note that Cashman has submitted only five transcripts to this Court:

(1) the transcript from the June 10, 2019 hearing on SDS's initial motion for summary judgment, which the trial justice ultimately denied;

(2) the transcript from the February 13, 2020 hearing on SDS's motion for judgment as a matter of law, which the trial justice ultimately granted in a bench decision on February 18, 2020, for which we do *not* have the transcript;

(3) the transcript from the July 1, 2020 hearing on SDS's motion for attorneys' fees, which the trial justice granted in a written order;

(4) the transcript from the December 15, 2021 hearing on SDS's motion for final judgment, which the trial justice denied in a written decision;

(5) and the transcript from the February 8, 2023 hearing on SDS's renewed motion for final judgment, which the trial justice granted in a bench decision that same day.

This Court has previously held that "the deliberate decision to prosecute an appeal without providing the Court with a transcript of the proceedings in the trial court is risky business." *Palange v. Palange*, 243 A.3d 783, 784 (R.I. 2021) (mem.) (brackets omitted) (quoting *Bailey v. Saunders*, 151 A.3d 764, 764 (R.I. 2017) (mem.)). Article I, Rule 11(a) of the Supreme Court Rules of Appellate Procedure requires that "[p]romptly after filing the notice of appeal the appellant shall comply with the provisions of Rule 10(b) or (c) and shall take any other action necessary to enable the clerk to assemble and transmit the record." Cashman alone was responsible for "ensur[ing] that the record is complete and ready for transmission." *Boulais v.*

*DiPaola*, 305 A.3d 1270, 1271 (R.I. 2024) (mem.) (quoting *Small Business Loan Fund Corporation v. Gallant*, 795 A.2d 531, 532 (R.I. 2002)).

Aside from not having the transcript from the bench decision granting judgment as a matter of law, we do not have the transcripts from the over forty-day-long bench trial at which the evidence was presented. In making her decision on SDS's motion for judgment as a matter of law, the trial justice was required to evaluate the credibility of witnesses and weigh the evidence presented. *See Cathay Cathay*, 962 A.2d at 745. We cannot say the trial justice erred in her analysis or that a justiciable issue of fact remained when we ourselves have neither the transcripts of the trial at which the evidence was presented nor the transcript from the bench decision in which the trial justice explained her decision and rationale.

**B. Attorneys' Fees**

Next, Cashman argues that the trial justice abused her discretion by awarding attorneys' fees to SDS under § 9-1-45. In relevant part, § 9-1-45 states that in a case involving a breach of contract, a court may award "attorney's fee[s] to the prevailing party" if the court "[f]inds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party." Section 9-1-45. The parties' only dispute is whether there was a justiciable issue of fact, not law. On this point, Cashman presents three distinct arguments as to why the trial justice erred. We address them each in turn.

## Law of the Case Doctrine

First, Cashman contends that the law-of-the-case doctrine prohibited an award of attorneys' fees. Although not argued with specificity on appeal, Cashman's argument in Superior Court was that, because both the motion for summary judgment and the motion for attorneys' fees call into question the same issue—whether there was a justiciable issue of fact—the trial justice was precluded from deciding the issue in the negative when deciding the motion for attorneys' fees because she had previously decided the same issue in the affirmative when deciding the motion for summary judgment.

The law-of-the-case doctrine provides that "after one judge has decided an interlocutory matter in a pending suit, a second judge on that same court, when confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling." *Richardson v. Smith*, 691 A.2d 543, 546 (R.I. 1997). As Cashman fails to address, however, this doctrine is not applicable "when evidence has been introduced in the interim that significantly extends or expands the record * * *." *Id.* Here, testimony from multiple witnesses was presented with copious additional evidence in the interval between the two decisions. Furthermore, as the trial justice aptly noted, the law-of-the-case doctrine "is intended to preserve interlocutory rulings from other judges on the same case,

which is not at issue here." As such, we agree with the trial justice that the law-of-the-case doctrine does not apply.

## Preclusive Effect of Denial of Summary Judgment

Second, and relatedly, Cashman argues that, because the trial justice found that there was a justiciable issue of fact when she denied SDS's motion for summary judgment, that precluded her from later finding that there was not a justiciable issue of fact for an award of attorneys' fees under § 9-1-45. The validity of Cashman's argument turns on the assumption that the standard for finding a justiciable issue of fact at summary judgment and the standard for finding a justiciable issue of fact for an award of attorneys' fees under § 9-1-45 are the same. We disagree.

This Court has explained that "[s]ummary judgment is appropriate when no genuine issue of material fact is evident from the pleadings, depositions, * * * and admissions on file * * * and the [trial] justice finds that the moving party is entitled to prevail as a matter of law." *Bennett v. Steliga*, 300 A.3d 558, 567 (R.I. 2023) (quoting *Kemp v. PJC of Rhode Island, Inc.*, 184 A.3d 712, 716 (R.I. 2018)). The standard for summary judgment requires the trial justice to view the evidence in the light most favorable to the nonmoving party. *See Bronhard v. Thayer Street District Management Authority*, 326 A.3d 178, 183 (R.I. 2024). As the trial justice explained in her order denying summary judgment, "[b]y relying on competing affidavits, deposition testimony, and other documents, the parties are asking this [c]ourt to

- 14 -

weigh the evidence and make credibility determinations [when deciding on the motion for summary judgment]. Credibility determinations and evidence weighing are clearly prohibited at the summary judgment stage."

An award of attorneys' fees, however, comes at the close of litigation. At this stage of trial, the same prohibition on making credibility determinations and weighing the evidence does not apply. The trial justice explained in her order granting attorneys' fees that she found that Cashman's first "two claims were completely unsupported by any evidence on the record, [and] there [was] a complete absence of a justiciable issue of either law or fact as to these allegations." The "other two breach of contract claims fa[red] similarly," as she found that "the evidence clearly demonstrated that Cashman's [third] claim [] [was] outside the scope of SDS's contract and the alleged breach was the result of other contractors" and that Cashman presented "non-credible evidence as to SDS's failure to notify of underwater defects" (Cashman's fourth claim). Upon her review of the evidence, the trial justice concluded that "Cashman failed to provide any 'validly raised and amply supported questions of fact and law' in its claims against SDS." (Quoting *ADP Marshall, Inc.*, 710 F.Supp. 2d at 241.)

Although this Court has not clearly articulated the standard for finding whether a justiciable issue of fact exists when considering an award of attorneys' fees under § 9-1-45, we hold that denying summary judgment does not, at least under

the specific circumstances of this case, create a categorical bar on an award of attorneys' fees at the close of litigation.

**Abuse of Discretion: Justiciable Issues of Fact**

Third, Cashman claims, without any specificity, that the trial justice abused her discretion because Cashman presented "innumerable justiciable issues of fact * * * at trial which precluded" an award of attorneys' fees.

The "issue of whether there exists a basis for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is *de novo*." *Danforth v. More*, 129 A.3d 63, 72 (R.I. 2016) (emphasis added) (quoting *Shine v. Moreau*, 119 A.3d 1, 8 (R.I. 2015)). "If it is determined that there is an adequate legal basis for such an award, then we review a trial justice's decision awarding or denying attorneys' fees for an abuse of discretion." *Id.* "When considering the legal basis under § 9-1-45, we have said that when 'defendants did prevail in a civil action arising from a breach of contract, the trial justice thus has statutory authority to award attorneys' fees to defendants if, within his considerable discretion, he determined that they were warranted.'" *Mallozzi v. Warwick Wings, LLC*, 330 A.3d 557, 569 (R.I. 2025) (quoting *Arnold v. Arnold*, 187 A.3d 299, 316 (R.I. 2018)).

The parties do not dispute that this award stems from a breach-of-contract claim. As such, our analysis turns next to whether there was a justiciable issue of fact. Specifically, at oral argument, Cashman relied on the trial justice's bench

- 16 -

decision granting judgment as a matter of law. In that decision, Cashman argued, the trial justice explained the many justiciable issues of fact which she resolved, thus demonstrating that justiciable issues of fact must have existed. But Cashman makes no specific showing as to what those justiciable issues of fact were.

When asked to determine if there was a complete absence of justiciable facts, this Court must necessarily evaluate the facts disputed and presented, but we are asked to do so with an incomplete record. Cashman said itself at the hearing on attorneys' fees that determining if a justiciable issue of fact exists requires a "total analysis of the overall breach of contract claim." Without the transcripts from the trial at which the evidence and testimony were presented and without the transcript from the hearing at which the trial justice issued the bench decision granting judgment as a matter of law on which Cashman relies, we cannot say that the trial justice later erred when she found no justiciable issue of fact existed. As such, neither can we say that she abused her discretion when issuing an award of attorneys' fees under § 9-1-45.

### C. Claim Barred by the Bankruptcy Code

Next, Cashman argues that SDS's recovery of attorneys' fees is barred by the Bankruptcy Code. Specifically, Cashman contends that 11 U.S.C. § 1141 of the United States Bankruptcy Code discharged the judgment and, thus, the judgment is "void as a matter of law." SDS was added as a party to this litigation three years

- 17 -

before the confirmation date[5] and, according to Cashman, "SDS knew or should have known that it had a claim against Cashman under § 9-1-45 before the bankruptcy proceedings concluded." Cashman argues that SDS needed to "seek relief from the automatic bankruptcy stay to assert claims against Cashman in the cofferdam litigation" and that it did not.

In rebuttal, SDS argues that the attorneys' fees are not void because they arose after the date of confirmation and SDS could not "predict that Cashman would fail to present any valid claim against SDS." Essentially, the parties agree that if the claim for attorneys' fees arose prior to the discharge, they are barred as a "contingent" claim; conversely, if the claim instead arose as a distinct claim after the discharge, they are not "contingent" and are recoverable. The question for the Court to determine, then, is whether the claim for attorneys' fees is "contingent" under the Bankruptcy Code.

State courts possess concurrent jurisdiction over the question of whether a particular debt has been discharged. *See Taggart v. Lorenzen*, 587 U.S. 554, 564 (2019). Relevant to the issues in this case, confirmation of a plan of reorganization under chapter 11 of the United States Bankruptcy Code discharges the debtor from

---

[5] "Confirmation date" refers to the date on which an order confirming the proposed plan of reorganization enters. *See* 11 U.S.C. § 1129. Debts arising prior to the confirmation date are considered discharged unless included in the order confirming said plan. 11 U.S.C. § 1141(d)(1).

- 18 -

any claims that arose prior to the date of confirmation, unless otherwise provided for in the statute, the plan of reorganization, or the order confirming the plan. 11 U.S.C. § 1141(d)(1). Specifically included in the definition of a "claim" are "contingent" claims. 11 U.S.C. § 101(5)(A). Therefore, whether SDS may recover attorneys' fees despite Cashman's bankruptcy and subsequent plan of reorganization turns on whether the claim for attorneys' fees was "contingent," and because our determination of what constitutes "contingent" turns on our interpretation of the Bankruptcy Code, our review is *de novo*.

"Congress deliberately included contingent claims in the definition * * * to permit 'the broadest possible relief in the bankruptcy court' * * *." *In re CD Realty Partners*, 205 B.R. 651, 656 (Bankr. D. Mass. 1997) (quoting *In re Black*, 70 B.R. 645, 649 (Bankr. D. Utah 1986)). As the trial justice correctly noted, however, "[a]lthough 'every future event and right to payment is to some extent contingent on some preconfirmation state of affairs, * * * not every post[-]confirmation right to payment was, prior to confirmation, a contingent claim.'" (Quoting *In re Reardon*, 566 B.R. 119, 127 (Bankr. D. Mass. 2017).)

One common test for determining if a claim is contingent, at least in a breach-of-contract context, "essentially involves two prongs: 'the Court must determine first what event or series of events "triggers" [the] liability and then whether the occurrence of that event either was or could fairly have been

contemplated by the parties before confirmation of the plan.'" *Reyes v. Standard Parking Corporation*, 461 B.R. 153, 159 (D.R.I. 2011) (quoting *In re CD Realty Partners*, 205 B.R. at 657).  When considering attorneys' fees specifically, federal courts have "endorsed the notion that by voluntarily continuing to pursue litigation post-petition that had been initiated pre-petition, a debtor may be held personally liable for attorney fees and costs that result from that litigation." *In re Ybarra*, 424 F.3d 1018, 1024 (9th Cir. 2005).[6]  Under this theory,

> "a claim for attorneys' fees is a contingent claim only where the potential for incurring post-discharge liability was contingent 'upon what others might do' and 'entirely out of [the debtor's] hands before he entered bankruptcy.' * * * But where the debtor voluntarily undertook a new course of litigation, which we described as a decision 'to return to the fray' * * * any new liability for attorneys' fees constituted a post-discharge cost." *In re Castellino Villas, A. K. F. LLC*, 836 F.3d 1028, 1035 (9th Cir. 2016) (quoting *Siegel v. Federal Home Loan Mortgage Corporation*, 143 F.3d 525, 533 (9th Cir. 1998)).

---

[6] We note that the same federal courts generally hold the opposite if the contract itself contemplated attorneys' fees and the attorneys' fees are part of the contract damages awarded. *See In re Castellino Villas, A.K.F. LLC*, 836 F.3d 1028, 1034 (9th Cir. 2016) ("[I]f a creditor and debtor are engaged in pre[-]petition litigation pursuant to a contract that includes an attorneys' fees provision, and the creditor can fairly or reasonably contemplate that it will have a claim for attorneys' fees if an extrinsic event occurs (that is, if it prevails in the litigation), then the creditor's claim for attorneys' fees will be discharged in the debtor's bankruptcy even if the creditor incurs attorneys' fees after the debtor was discharged.") (internal quotation marks omitted). That is not the case here.

We agree with the United States Courts of Appeals for the Seventh Circuit that:

> "A principal goal of bankruptcy is to provide the debtor with reasonable exemptions and a fresh start. Allowing the debtor to discharge attorney's fees incurred in the post-petition pursuit of dubious claims might invite egregious abuses, while not allowing discharge of attorney's fees might prevent debtors from pursuing reasonable exemptions which are in the form of lawsuits. The balance must be struck so that post-bankruptcy acts on the part of the debtor cannot be undertaken with impunity. This follows from the general principle that only liabilities arising from pre-petition acts are discharged in bankruptcy." *In re Ruben*, 774 F.3d 1138, 1141 (7th Cir. 2014) (quoting *In Re Hadden*, 57 B.R. 187, 190 (Bankr. W.D. Wis. 1986)).

Under that premise, we agree with the trial justice and hold that Cashman's liability for SDS's fees was not triggered until SDS prevailed on its motion for judgment as a matter of law. To hold otherwise would require SDS to have foreseen the outcome in the litigation that Cashman initiated and pursued. As such, the trial justice did not err in finding that the award of attorneys' fees is not barred by the Bankruptcy Code.

## IV

## Conclusion

For the foregoing reasons, we affirm the amended judgment of the Superior Court. The record may be returned to the Superior Court.

**Justice Robinson, concurring in part and dissenting in part**. I am pleased to concur in Part III.A of the Court's carefully written opinion (entitled "Judgment as a Matter of Law"). However, I respectfully but unreservedly dissent from Part III.B of that opinion (entitled "Attorneys' Fees").[1]

I believe that the award of attorneys' fees in this case flies in the face of the clear language of G.L. 1956 § 9-1-45. That statute is a narrow legislatively created exception to the American Rule.[2] It reads in pertinent part as follows:

> "The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:
>
> "(1) Finds that there was a *complete absence* of a justiciable issue of either law or fact raised by the losing party * * *." (Emphasis added.)

---

[1] Since I believe that the majority errs in upholding the award of attorneys' fees under G.L. 1956 § 9-1-45, I express no view relative to Part III.C of the Court's opinion ("Claim Barred by the Bankruptcy Code").

[2] Pursuant to what has long been known as the American Rule, each litigant is required "to pay its own attorney's fees absent statutory authority or contractual liability." *Moore v. Ballard*, 914 A.2d 487, 489 (R.I. 2007) (footnote omitted); *see also Danforth v. More*, 129 A.3d 63, 72 (R.I. 2016). *See generally Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 247 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.").

Moreover, the American Rule is a rule to which this Court staunchly adheres. *See, e.g.*, *Arnold v. Arnold*, 187 A.3d 299, 315 (R.I. 2018); *Danforth*, 129 A.3d at 72; *Shine v. Moreau*, 119 A.3d 1, 8 (R.I. 2015); *Moore*, 914 A.2d at 489.

The language of § 9-1-45 could not be clearer—perhaps most significant is the use of the adjective "complete" as a modifier of the noun "absence" in subsection (1) of the statute. And this Court has emphasized that "[i]t is a fundamental principle in our jurisprudence that, 'when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *Shine v. Moreau*, 119 A.3d 1, 9 (R.I. 2015) (quoting *State v. Diamante*, 83 A.3d 546, 548 (R.I. 2014)).[3]

It is well settled that "whether there exists a *basis* for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is *de novo*." *Blue Cross & Blue Shield of Rhode Island v. Najarian*, 911 A.2d 706, 709 (R.I. 2006).[4] *See also Danforth v. More*, 129 A.3d 63, 72 (R.I. 2016); *Shine*, 119 A.3d at 8.

---

[3]     It should also be borne in mind that, when there is a statute that is in derogation of the American Rule, such a statutory exception "must be construed strictly." *Moore*, 914 A.2d at 489 n.3; *see also Shine*, 119 A.3d at 10.

[4]     We have further stated that "[o]nly if it is determined that there is such a basis, then this Court will review a motion justice's actual award of attorneys' fees for an abuse of discretion." *Blue Cross & Blue Shield of Rhode Island v. Najarian*, 911 A.2d 706, 709 (R.I. 2006). In my view, this case never required the exercise of discretion by the trial justice because the clear criteria set forth in § 9-1-45 (notably the complete absence of a justiciable issue of fact) were not satisfied.

To come quickly to the nub of this dissent, it is my definite conviction that there was *no basis* for an award of attorneys' fees under § 9-1-45 in this case.[5] The statute at issue (§ 9-1-45) is a model of plain, straightforward English. It authorizes the court to award attorneys' fees to the prevailing party in a civil breach of contract case where the court finds "that there was a *complete absence* of a justiciable issue of either law or fact raised by the losing party." Section 9-1-45 (emphasis added).[6] It is my strongly held view that there very definitely were justiciable issues of fact in this case. As I see it, the denial by the trial justice of SDS's motion for summary judgment[7] is an irrefutable indication that there was not "a complete absence of a justiciable issue of fact * * * raised by the losing party" in this case. Indeed, the majority opinion expressly states:

> "The trial justice denied the motion [for summary judgment], finding that Cashman had met the burden of proving *there were genuine disputes of material fact*

---

[5] It is important to keep in mind that § 9-1-45 was the sole ground alluded to by the trial justice as a basis for her conclusion that attorneys' fees should be awarded in this case. I expressly decline from speculating as to whether some other basis might possibly have existed for awarding fees. *See Grady v. Narragansett Electric Company*, 962 A.2d 34, 42 n.4 (R.I. 2009) (noting "our usual policy of not opining with respect to issues about which we need not opine").

[6] I agree with the majority opinion's statement to the effect that "[t]he parties' only dispute is whether there was a justiciable issue of fact, not law."

[7] SDS's motion for summary judgment was filed almost five years after SDS had been added as a defendant by Cashman.

- 24 -

sufficient to get by the summary-judgment phase." (Emphasis added.)[8]

Bearing in mind that § 9-1-45 explicitly requires that there be "a complete absence of a justiciable issue of * * * fact raised by the losing party" before the trial court is vested with the discretionary authority to award attorneys' fees under the statute, I utterly fail to understand why the denial of summary judgment in this case was not the end of the hunt. It is my view that, from the moment that SDS failed in its attempt to prevail by summary judgment, § 9-1-45 ceased to be available as a basis for an award of attorneys' fees.[9]

For these reasons, I respectfully, but unreservedly, dissent from Part III.B of the Court's opinion.

---

[8]     Very significantly, the trial justice's order denying SDS's motion for summary judgment explicitly stated: "*As there are a number of material facts in dispute*, summary judgment is not proper here." (Emphasis added.) Once that determination was made by the trial justice, it seems to me that the die was cast. I simply do not understand how § 9-1-45 can apply in the face of that unambiguous determination by the trial justice.

[9]     Although I am fully satisfied that the trial justice's denial of SDS's motion for summary judgment should, as of that moment, have precluded any award of attorneys' fees under § 9-1-45, I cannot pass over in silence the fact that, after the motion for summary judgment was denied, the trial of this matter took place for a period of time which the majority opinion describes as "spanning more than forty days, at which hundreds of exhibits were presented and eighteen witnesses gave testimony." It is incomprehensible to me how a trial of such length and involving such a large quantity of evidence could not involve at least some issues of fact that had to be resolved by the trial justice. *See UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corporation*, 641 A.2d 75, 80 (R.I. 1994).



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Cashman Equipment Corporation, Inc. v. Cardi Corporation, Inc., et al. |
| **Case Number** | No. 2023-154-Appeal. (PB 11-2488) |
| **Date Opinion Filed** | June 3, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiff: Jackson C. Parmenter, Esq. |
| | For Defendant: Lauren E. Jones, Esq. |